The State v. Nickens.

THE STATE v. NICKENS, *Appellant.*

Division Two, June 12, 1894.

122  607
139  219
122  607
144   91
74a 590
122  607
156  117

1. **Criminal Practice**: ASSAULT TO KILL: ORDINANCE: EVIDENCE. An ordinance requiring a saloon keeper to give bond to keep an orderly place is not admissible on a trial for an assault with intent to kill committed in his saloon.

2. ———: TRIAL JUDGE, EXAMINATION OF WITNESS BY. The trial judge may ask a witness such questions as he deems necessary for his own information and that of the jury.

3. ———: LOWER GRADE OF OFFENSE: INSTRUCTIONS: WAIVER. On a trial for an assault with intent to kill, with malice aforethought, objection to the failure of the court to instruct on a lower grade of assault can not be made for the first time on appeal.

4. ———: CHARACTER: INSTRUCTIONS: WAIVER. Where, on a criminal trial an instruction on the subject of the evidence introduced as to defendant's good character is not requested by him, the failure of the court to instruct thereon is not reversible error.

5. ———: NEW TRIAL: NEWLY DISCOVERED EVIDENCE. A new trial, because of newly discovered evidence, should not be granted, where such evidence is merely cumulative and no satisfactory reason is given why the witnesses were not produced at the trial and the defendant does not show by his affidavit that he did not know of the evidence at the time of the trial.

6. **Appellate Practice**: BILL OF EXCEPTIONS: WAIVER. A bill of exceptions and statutory affidavits filed therewith considered on the hearing of the appeal in this case, although the bill was not signed by the trial judge, nor permitted by him to be filed, no objections being made to the manner of perfecting the bill by the respondent.

*Appeal from St. Louis Criminal Court.*—HON. H. L. EDMUNDS, Judge.

AFFIRMED.

*McDonald & Howe* for appellant.

(1) The court erred in refusing to allow the introduction of the city ordinance offered by the appellant. (2) The court committed error in addressing his remarks to the witnesses Summers and Hopkins while they were on the stand. (3) The court erred in refusing to instruct the jury upon the lower grade of assault to kill, under section 3490, Revised Statutes. (4) The court erred in failing to instruct the jury upon the good character of the accused. (5) The court erred in overruling appellant's motion for new trial. (6) The court erred in refusing to sign and allow appellant's bill of exceptions. Revised Ordinances, City of St. Louis, sec. 1428, p. 952; *State v. Findlay,* 101 Mo. 217; *State v. Hill,* 91 Mo. 423; *Suttie v. Aloe,* 39 Mo. App. 38; *State v. Schloss,* 90 Mo. 361; *State v. Hroneck,* 95 Mo. 79; *State v. DeMosse,* 98 Mo. 340; *State v. Jones,* 14 S. W. Rep. 947; Kelley's Crim. Law and Prac., sec. 441, p. 286; Revised Statutes, 1889, secs. 3637, 3643.

*R. F. Walker,* Attorney General, and *C. O. Bishop* for the state.

(1) The alleged newly discovered evidence was merely cumulative and hence constituted no ground for a new trial. Defendant did not file his own affidavit in support of the motion. *State v. Welsor,* 21 S. W. Rep. 443. (2) The motion for a new trial does not assign as a ground therefor the failure of the court to give instructions. (3) The evidence as to ordinance requiring a dramshop keeper to give a bond to conduct an orderly house was properly excluded. (4) Where the affidavits filed as to the correctness of the bill of exceptions are in conflict, the certificate of the trial judge that the bill is untrue should prevail. *State v. Jones,* 102 Mo. 305.

BURGESS, J.—From a conviction in the St. Louis criminal court, for an assault with intent to kill one Andrew Hopkins, on purpose and of his malice aforethought, defendant appeals. Defendant's punishment was fixed at two years' imprisonment in the penitentiary. After ineffectual motions for new trial and in arrest, he presented his bill of exceptions to the trial judge who refused to sign the same, and certified his refusal on the ground that it was untrue.

Defendant then presented a bill of exceptions signed by three bystanders which the judge refused to allow to be filed, and within five days defendant deposited his said bill of exceptions, supported by affidavits with the clerk of the court, and also within five days, the circuit attorney, representing the state, filed counter affidavits.

The difficulty occurred in a saloon of which defendant was manager. Both the defendant and Hopkins are negroes. On the evening of November 19, 1892, Hopkins, in company with one John Ray, went into the saloon, in which there were several persons, drank several times, when Hopkins commenced taking off the hats of some of those present, when defendant ordered him to desist, give the hats back, and then ordered him out of the saloon. Hopkins started to go out, when he was stopped by the defendant, who, about the same time, drew his pistol. Hopkins said, "You have got a gun, why don't you shoot?" Defendant then fired at Hopkins, the ball entering the right arm near the wrist and coming out near the elbow. When defendant was arrested a few minutes after the shooting, he stated that he had shot Hopkins for disturbing the peace and made the remark "God damn him, I wish I had killed him." No weapons were found upon Hopkins.

VOL. 122—39

The theory of the defense was that of self-defense. Defendant admitted the shooting, testified in his own behalf that he was not personally acquainted with Hopkins; that Hopkins was under the influence of liquor, and drank two or three times in the saloon; he was very boisterous and noisy; that he pulled off the hats of two or three men, who raised quite a row about it. "I came out and told Hopkins to give the hats back to the boys, and keep quiet, whereupon he got mad and cursed me. Hopkins gave Brown his hat back, but refused to give McGee his, and somebody said to Hopkins, 'Slug him in the neck,' meaning McGee. Not wishing to have any trouble in there, I ordered Hopkins out of the saloon, and he turned to me with the left hand in his left hip pocket, and acted like he was going to draw a pistol, and said to me 'Damn you, you have got a gun, have you? Well, so have I, as big a gun as you have got, and damn you, shoot,' and was very threatening and acted like he was going to pull his pistol out, and I was afraid he was going to shoot me, and I shot first. I did not know the man; I saw he was under the influence of liquor, and when he pulled his hand back from his pocket I was afraid he would shoot me, and in order to be first, I shot him before he could get a chance to shoot me. He had started to back out of the saloon, but at the time he started to pull out his pistol he stopped and turned toward me, and when he ran his hand down in his hip pocket, before he could have time to draw his pistol, I shot."

Defendant proved a good character for peace and quiet. The court instructed for shooting with malice aforethought and on self-defense.

Upon the trial, defendant offered in evidence an ordinance of the city of St. Louis, in relation to dram-

shops for the purpose of showing that, before a license could be obtained for a dramshop, the applicant had to give a bond in the sum of $2,000 conditioned that he would keep an orderly house, etc., which the court, on objection of the state, excluded, and this, it is insisted, was error. The ordinance was clearly inadmissible for any purpose, having no connection whatever with, or bearing upon, the case. The defendant had the same right without the ordinance that he had with it to prevent disorderly conduct in his place of business and to use all necessary means for that purpose. The ordinance was not intended for his protection and to enable him to keep an orderly house but that he might be held amenable to the law for failing to do so, and for a violation of the ordinance in this regard be prosecuted upon his bond by the city.

Objection is taken to the action of the court in propounding questions to the witness Sommers; but these remarks were not embodied in the motion for a new trial and can not be reviewed here. This contention, however, seems to be without merit. It would be indeed strange if the trial judge were not permitted to ask such questions of witnesses during the trial as he thought necessary for his own information, or that of the jury, without being subject to unjust criticism. It was not only his right, but his duty to do so. *State v. Pagels*, 92 Mo. 310.

It is also contended that the court should have given an instruction for the lower grade of assault with intent to kill. It is only necessary to say with respect of this contention, that no instruction for the lower grade was asked by defendant nor was the attention of the court for failure to thus instruct called in the motion for new trial, and the objection can not be raised for the first time in this court. *State v. Cantlin*, 118 Mo. 100; *State v. DeMosse*, 98 Mo. 344; *State v.*

*Foster*, 115 Mo. 448; *State v. Noeninger*, 108 Mo. 166.

What has been said applies with equal force to the failure of the court to instruct on the evidence as to the good character of the defendant. No instruction on this subject was asked by the defendant or his counsel, and it was not reversible error for the court to neglect to instruct on this phase of the case. *State v. Murphy*, 118 Mo. 7; *State v. McNamara*, 100 Mo. 100.

There was no error in overruling defendant's motion for a new trial on the ground of newly discovered evidence. The evidence was merely cumulative and would not likely produce a different result on another trial. Moreover, both of the persons whose affidavits were filed in support of this contention, viz., George Rogers and Ellen Donahue, were witnesses to the difficulty, one of them, Ellen Donahue, having a lunch counter, the door of which opened into the room where it occurred, in which she was standing at the time, and no satisfactory reason is given why they were not introduced as witnesses upon the trial. Nor did the defendant file his own affidavit in support of his motion, and it did not appear but what he knew of this evidence at the time of the trial. It was held by this court in *State v. McLaughlin*, 27 Mo. 111, that by the application it must, be shown: *First*, that the evidence has come to the knowledge of defendant since the trial; *second*, that it was not owing to the want of due diligence that it did not come sooner; *third*, it is so material that it would probably produce a different result if the new trial were granted; *fourth*, that the affidavit of the witness himself should be produced or his absence accounted for; *fifth*, that the object of the testimony is not merely to impeach the character or credit of a witness. See, also, *State v. Welsor*, 117 Mo. 570.

No objection has been taken by counsel for the state to the manner of perfecting the bill of exceptions, and

of preserving the proceedings on the trial of the cause. We have, therefore, examined with much care the bill of exceptions as presented to the trial judge and which he refused to sign or permit to be filed, together with the affidavits filed by defendant under the statute, and after having done so, we have been unable to find any error in the record which would justify a reversal of the judgment. It is, therefore, affirmed. GANTT, P. J., concurs. SHERWOOD, J., concurs, except on the point as to necessity of instruction on good character.