BERT TOWNSEND, Respondent, v. CITY OF JOPLIN, Appellant.

Springfield Court of Appeals, December 6, 1909.

1. MUNICIPAL CORPORATIONS: Liability For Defective Streets: Care of Street Question For Jury. Plaintiff's horse became frightened at a street car and in attempting to turn away from the approaching car, the buggy ran into an open gutter or ditch on the side of the street. Plaintiff was thrown from the buggy and sustained injuries. *Held*, that the question of the danger or safety of the ditch and whether or not the city was negligent in the location and construction of the same or in permitting it to remain uncovered, was one for the triers of the facts and when submitted to the jury under proper instructions, their finding will not be disturbed in the appellate court.

2. ———: ———: Governmental Question. Whether the whole or only a portion of a street should be prepared and thrown open to the public use is a governmental question; and after

Townsend v. Joplin.

the street has been thrown open to the public, then the duty devolves upon the city to keep it in repair and safe for persons and vehicles to travel upon while exercising ordinary care.

3. ———: ———: **Other Causes Concurring With City's Negligence.** A defendant may be liable if his negligence concurred with that of another or with the act of God, or with an inanimate cause, and became a part of the direct and proximate cause of the injury, although not the sole cause. So a city may be liable for an injury caused by a defective street, although some accidental cause also contributed to the accident.

4. ———: ———: **Pleading: Sufficiency of Pleading Alleging Negligence.** Petition in this case examined and allegations of negligence of defendant in maintaining an open gutter in street held sufficient, after judgment, to have advised defendant of the nature of the negligence charged against it.

5. ———: ———: ———: **Practice: *Technical Objections to Petition at End of Trial Not Encouraged.*** The practice of allowing a party to a suit, when he finds at the last moment that the decision is against him, to spring upon the court a technical objection to the petition should not be encouraged.

6. **PRACTICE: Verdict, When Held Excessive.** It is only when the verdict is so excessively large and so out of line with reason and justice as to shock the conscience and satisfy the unbiased mind that it was not the result of the jury's unprejudiced deliberation, that an appellate court will say that the amount of damages awarded by the jury is excessive. Evidence in this case examined and held that the verdict should not be set aside as excessive.

7. ———: **Duty of Trial Judge.** The trial judge has a large discretion in the application of rules of practice and his action in this respect will not be reversed by an appellate court unless it exhibits abuse of discretion resulting in injustice. It is not only the trial judge's right but his duty to ask leading questions in order to elicit the truth. Evidence in this case examined and held not to show such misconduct of the trial judge as would warrant a reversal of the judgment.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

AFFIRMED.

*Mercer Arnold* for appellant.

(1)   The petition in this case does not state facts sufficient to constitute a cause of action. The only allegation of negligence in plaintiff's petition is that of failing to cover the gutter. Gutters are constructed without covers in order that they may carry off surface water. There is no duty on a city to cover its gutters. Stone v. Troy, 60 Hun 580, 14 N. Y. Supp. 616; Lavasseur v. Village of Haverstraw, 63 Hun 627, 18 N. Y. Supp. 237; Van Pelt v. Clarksburg, 42 W. Va. 218, 24 S. E. 878; Hughes v. Baltimore, Fed. Cas. No. 6844; Canavan v. Oil City (Pa.), 38 Atl. 1096; Heiss v. Lancaster (Pa.), 52 Atl. 201. (2)   The court committed error in refusing to give defendants peremptory instruction in the nature of a demurrer at the close of plaintiff's case. A city is not compelled to improve the entire portion of each street and, if a person is injured on the unimproved portion, by reason of its unimproved condition, he cannot recover. There is no negligence. Bassett v. St. Joseph, 53 Mo. 290; Brown v. Mayor et al., 57 Mo. 156; Craig v. Sedalia, 63 Mo. 417; Ely v. St. Louis, 181 Mo. 723; Ruppenthal v. St. Louis, 190 Mo. 213. (3)   The court committed error prejudicial to the defendant by asking leading and suggestive questions of plaintiff's witnesses. Wright v. Richmond, 21 Mo. App. 76; Rose v. Kansas City, 125 Mo. App. 231.

*Clay & Davis* for respondent.

(1)   It was the duty of defendant to keep its streets and highways in a reasonably safe condition for travel, and if plaintiff was injured by neglect of this duty, while using proper care, it is liable for the damages resulting therefrom. Bassett v. St. Joseph, 53 Mo. 290; Halpin v. Kansas City, 76 Mo. 335; Holding v. St. Joseph, 92 Mo. App. 143; Focker v. Kansas City, 94 Mo. App. 464; Coffey v. Carthage, 186 Mo. 573, s. c., 200 Mo. 616; Walker v. Kansas City, 99 Mo. 647; Smith v. Haytie, 130 Mo. App. 321; Kossman v. St. Louis, 153 Mo,

293; Vogelgesang v. St. Louis, 139 Mo. 127. (2) The trial judge may, at any time during the progress of the examination, ask the witnesses such questions as he deems necessary to elicit the whole truth for the benefit of himself and the jury. State v. Pagles, 92 Mo. 310; Schafer v. Railroad, 128 Mo. 64; Lefever v. Johnson, 79 Ind. 554; Long v. State, 95 Ind. 487; Sessions v. Rice, 70 Iowa 306; Bowden v. Achor, 95 Ga. 243; State v. Mathews, 98 Mo. 125; State v. Nickens, 122 Mo. 607; State v. Stephens, 70 Mo. App. 554; State v. Lockett, 168 Mo. 480; 8 Ency. Pl. and Pr., p. 71. (3) And in so doing he is not bound by the rule excluding leading questions. Comm. v. Galavan, 9 Allen (Mass.), 271; Lockhart v. State, 92 Ind. 452; Long v. State, 95 Ind. 487; Huffman v. Cawble, 86 Ind. 596.

STATEMENT.—This is an action of the respondent against the city of Joplin for an injury arising out of the alleged negligent construction and maintenance of an open gutter on the north side of Broadway at or near the intersection of Broadway and John streets in the city of Joplin.

On the day of the accident, respondent came to Joplin in company with Earl Elliott in a one-horse buggy owned and driven by Elliott. They came into Joplin and were traveling along Broadway towards the west. As they approached the point on Broadway where John street opens into it, they were met by a street car going east on Broadway. The horse became frightened at the car, became frenzied and unmanageable, and in attempting to turn away from the approaching car into John street where it intersected Broadway, ran into a gutter or ditch where it discharged into a tiling passing under Broadway, throwing the respondent and the buggy to the ground, breaking two or three bones of respondent's right hand and otherwise injuring him.

There was evidence tending to show that Broadway was one of the old and well-traveled streets of the city;

that it runs nearly due east and west at the point where the accident took place, but just beyond John street deflects to the southwest. Sidewalks extended along the north and south lines of the street. On the north side of Broadway where the accident took place, there was an open gutter which had been constructed by the appellant, connecting with and discharging into a tiling, passing under Broadway at the point where John street opens into it, the point of discharge into the tiling being some feet west of the east line of John street. John street runs nearly north and south, intersecting Broadway near the point where the accident occurred. The sidewalk on the north side of Broadway extends west to the east line of John street on the north side of Broadway, and if the sidewalk was extended west across John street, the gutter or ditch in question would be south of the extended sidewalk and in Broadway. A beaten path extends west from the sidewalk down to where the roadway of John street opens into Broadway, and the gutter or ditch in question, at the point where the accident occurred, is located south of this path on Broadway. There was evidence tending to show that at the point where the accident took place, the gutter or ditch was some two or three feet wide, and from one to two feet deep; also that at the point of discharge of the gutter into the tiling, a large rock had been placed over the tile to prevent driving into the open gutter or ditch and to prevent the breaking of the tile. The roadway of Broadway is improved and used by vehicles from gutter to gutter. At the point of the accident, and extending back ten or fifteen feet along the south line of the gutter or ditch in question, a little ridge of dirt had accumulated, which some of the witnesses estimated to be from four to eight inches above the level of the street and perhaps a foot or more wide, over which grass was growing at the time of the accident which occurred on May 5, 1908. There was evidence tending to show that respond-

ent was "laid up" and unable to work until September 15th of that year by reason of the injuries received.

NIXON, P. J., (after stating the facts).—I.  It will be seen from the statement herein that at least two causes co-operated to produce the respondent's injuries,—namely, the fright of the horse and the open gutter.  If the appellant city owed a duty to the public to construct a proper sewer at this place and negligently failed to do so, then its concurrent negligence contributed to the accident and it is liable for the damages.  A city is liable for an injury caused by a defective street although some accidental cause also contributed to the accident.  The doctrine of concurrent negligence is firmly rooted in the jurisprudence of this State.  A defendant may be liable even if the accident was not caused by his sole negligence.  He is liable if his negligence concurred with that of another, or with the act of God, or with an inanimate cause, and became a part of the direct and proximate cause of the injury, although not the sole cause.  [Harrison v. Kansas City Electric Light Co., 195 Mo. 606; Brennan v. City of St. Louis, 92 Mo. 482.]  The same doctrine as to concurrent negligence is stated in the case of Ballentine v. Kansas City, 126 Mo. App. 130.  In that case, the plaintiff hitched his horse to a thirty-pound weight in an alley and left him to deliver goods in an adjoining house.  On returning, he saw only the head of the horse as it went over an unguarded declivity on the opposite side of the alley.  It was held, on the evidence, that the city was guilty of negligence in not guarding the alley on the side of the declivity; and it was a question for the jury to say whether the injury was the sole result of the backing of the horse—in which event the city would not be liable for damages—or whether the injury was the result of the city's negligence contributed to by the accidental action of the horse—in which event the city would be liable.

The duty of the city to keep its streets in repair at the place of the accident was contested at the trial. The rule as to opening and repairing streets by cities has often been approved and is now well settled. The rule is that, whether the whole or only a portion of a street should be prepared and thrown open to public use is a governmental question; and after the street has been thrown open to the public, then the duty devolves upon the city to keep it in repair and safe for persons and vehicles to travel upon while exercising ordinary care. [Ruppenthal v. St. Louis, 190 Mo. 213.]

II. The objection is further made by the appellant that the petition states that it was an open gutter which caused the accident, and that gutters in cities are usually open and that on that account there was no negligence on the part of the appellant city. The reply is, that in the construction of city gutters there is no uniform rule as to their depth, width and location, and the question relating to their safety and danger must be determined under the facts of each particular case, and the question is to be submitted to the jury as to whether the construction in a given case was negligent or not, and that their safety or danger is a question of fact for the jury to determine under proper instructions. [Holding v. City of St. Joseph, 92 Mo. App. 143.] In the case now under consideration, the court, under proper instructions, submitted to the jury the question as to the location of the gutter and whether or not it was dangerous to persons traveling in vehicles. The finding of the jury, therefore, can not be disturbed in the appellate court.

III. Another objection of the appellant is that the petition does not state facts sufficient to constitute a cause of action; that the only allegation of negligence in plaintiff's petition is that of failing to cover the gutter.

There was no intimation during the trial of this case

that the defendant city intended to rely upon the insufficiency of the plaintiff's petition,—either by a demurrer to the petition or by objection to the admission of evidence,—and for the first time in the motion in arrest, the objection is specifically called to the attention of the court that the petition does not state facts sufficient to constitute a cause of action.

The petition is not open to this objection. It only states that the negligence consisted of allowing an open gutter on the north side of Broadway and on the south line of the portion of said street set apart and used for sidewalk purposes, but it gives the width and depth of such gutter, stating that it was eighteen or more inches deep and three feet or more in width,—and further, that it was dangerous to persons traveling in vehicles by reason of its open and exposed condition, and that its dangerous condition was known or could have been known by the exercise of ordinary care and prudence by the city, but that the appellant city negligently suffered the same to remain open when it was its duty to have covered the gutter so that travelers and vehicles passing from Broadway to John street and vice versa would, by the exercise of proper caution, not run into the said gutter.

We think that the allegations of the petition were sufficient to have advised the defendant of the nature of the negligence charged against it. And further, if the defendant had any question as to where or how the accident happened or as to the condition of the gutter causing the accident, and had desired further information to enable it to prepare for trial, it had the opportunity of filing a motion requiring the plaintiff to make his petition more specific by giving a detailed description of the precise condition of the gutter and the manner and nature of the negligence of the defendant which the plaintiff claimed was the cause of his injuries. We do not think that the practice is to be encouraged of allowing

a party to a suit to lie in wait for his adversary until the trial has been concluded, and, when he finds at the last moment that the decision is against him, to spring upon the court a technical objection to the petition.

IV. Another ground urged in appellant's motion for a new trial is that the judgment was excessive.

The evidence is that the plaintiff was injured on May 5, 1908, by having two or more bones in his hand broken and also receiving some slight injuries on his body; that by reason of the injuries, he remained out of work until the 15th of September, excepting one week; that his occupation was that of a steel jigman in a mining plant, for which employment before he was injured he received from three to three and one-half dollars per day. At the time of the trial on the 22d day of October, 1908, the injury of the hand continued to such an extent that he could not close it and do his usual work on account of its stiffness. Physicians testified that they could not state how long it would be before he would recover. The expenses of medical attention and medicines showed an indebtedness of about twenty-seven dollars incurred. Under this evidence, the judgment for seven hundred dollars can not be set aside as excessive under the rules of the Supreme Court governing such cases. It is only when the verdict is so excessively large and so out of line with reason and justice as to shock the conscience and to satisfy the unbiased mind that it was not the result of the jury's unprejudiced deliberation that an appellate court will say that the amount of damages awarded by the jury is excessive, and the result of prejudice, passion and bias. [Longan v. Weltmer, 180 Mo. 322.] The judgment in this case, when all the circumstances are considered, does not require, under the rule stated, that this court should set it aside as being excessive.

V. Another objection urged in the motion for a new trial is that the judge who presided at the trial, by his

questions and his threats to put the witness Aiken in jail, improperly influenced the jury in the determination of the case.

The function of a judge sitting in a case is to give the litigants an opportunity under the law to have their cases properly adjudicated. He is not a mere moderator between the contending parties. He is a sworn officer charged with great public duties. In order to establish justice, maintain truth and prevent wrong, he has a large discretion in the application of rules of practice, and his action in this respect will not be reversed by an appellate court unless it exhibits an abuse of discretion resulting in injustice. [Huffman v. Cawble, 86 Ind. 596.] A judge, in the discharge of his duties may call and examine witnesses in furtherance of justice, and may ask leading questions in order to elicit the truth. It is not only his right but his duty to do so. [State v. Nickens, 122 Mo. 607.] It is unnecessary to cite authorities to show that the judge must sit impartially between the parties litigant and not act as a partisan for either. To do otherwise would be to abdicate his high judicial functions and to take on himself those of an advocate in the case. After a patient and exhaustive examination of this case, we do not find any such misconduct of the trial judge as would warrant us in reversing the judgment.

The verdict was for the right party and the judgment is affirmed. All concur.