## MERCHANTS BANK v. GOODFELLOW.

No. 2597.   Decided April 17, 1914 (140 Pac. 759).

1. BILLS AND NOTES—DRAFTS—PARTIES.  A draft signed G., though having the name E. both in its upper and lower left-hand corner, is on its face the draft of G., and not of E.   (Page 351.)

2. BILLS AND NOTES—DRAFTS—CASHING BY BANK—RECOVERY OF DRAWER.  A bank which cashes for the payee a draft, on its face that of G. on E., though knowing G. was a buyer for E., may recover thereon of G. as drawer; it not knowing or having notice that it was given for goods sold by the payee to E., or that it was not drawn by G. for his own benefit.   (Page 351.)

3. WITNESSES—WITNESS CALLED AND EXAMINED BY COURT.  A party may not have testimony stricken merely because neither party called the witness, but the court of its own motion called him and had him testify.   (Page 353.)

APPEAL from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action by the Merchants Bank against Jesse Goodfellow.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*Hutchinson & Bucher* for appellant.

*Young, Snow & Ashton* for respondent.

STRAUP, J.

In this case the court found:

"(2) That at Salt Lake City, Utah, on the 30th day of January, 1912, the defendant, Jesse Goodfellow, by his bill of exchange in words and figures as follows, to wit: 'Wool, Eisemann Brothers, 200 Summer Street. No. 3481 Salt Lake City, 1/30, 1912 At Sight Pay to the order of J. W. Cochran $500.00, five hundred and 00-100 account wool contract. [Signed] Jesse Goodfellow. Eisemann Brothers, Boston, Mass.'—requested Eisemann Bros. of the city of Boston, State of Massachusetts, to pay to the order of J. W. Cochran at sight $500. (3) That the said defendant then and there delivered the same to the said J. W. Cochran. (4) That on the 30th day of January, 1912, at Salt Lake City, Utah, the said J. W. Cochran, for value received, indorsed the same to the plaintiff company. (5) That on the 6th day of February, 1912, the said bill of exchange was presented to the said Eisemann Bros. for acceptance, but was not by them accepted. (6) That the said bill of exchange was duly protested for nonpayment, and this plaintiff paid as costs of protesting the same, two dollars. (7) That notice thereof was duly given to the defendant. (8) That the defendant has not paid the said bill of exchange, nor any part thereof, except the sum of $33.40, which amount the defendants should be credited

with and the amount deducted from the sums due on said bill of exchange." Judgment was rendered for the plaintiff in the sum of $468.60. The defendant appeals.

The principal assignment of error relates to the ruling refusing the defendant's motion for a nonsuit. At the conclusion of the plaintiff's evidence the defendant interposed the motion "on the grounds that the draft sued on was the draft of Eisemann Bros. and not the draft **1, 2** of the defendant, Jess Goodfellow." We see nothing to support the motion. The plaintiff's evidence shows that in due course of business Cochran, who was a customer and a depositor at the bank, presented and indorsed the draft at the bank at Salt Lake City. The bank gave him face value for it, $250 in cash and a credit deposit of $250. The president of the bank testified that he knew Eisemann Bros. by reputation, and from general repute also knew that the defendant "was a purchaser of wool acting for them." He further testified:

"Mr. Goodfellow or Eisemann Bros. didn't do business with our bank, but I have probably handled a great many of their drafts before. I have known that Mr. Goodfellow was the agent of Eisemann Bros. for a good while, and I relied on that fact when I cashed the draft. I had known he was their agent for some time. I knew Mr. Goodfellow had been buying wool for Eisemann Bros. for a long time, and if it had been somebody I didn't know I would not have cashed the draft. The inducement for me to purchase the draft was the fact that Mr. Cochran had an account at the bank." This but shows that the witness knew who Goodfellow, the drawer, and Eisemann Bros., the drawee, were, and that the one was a general agent of the other. But nothing, except as appears from the face of the draft itself, was made to appear what the draft was given for, or on whose behalf, or for whose benefit it was drawn. The draft on its face shows it to be Goodfellow's and not Eisemann Bros.' draft. There is nothing to show that anything was said or done, or to indicate that the bank had any knowledge whatever that the draft was anything

other than what it on its face appears to be—Goodfellow's draft, he the drawer, and Eisemann Bros. the drawee. Though the bank knew Goodfellow was a wool buyer for Eisemann Bros., yet, there is nothing unusual in an agent drawing on his principal, as was here done.

A further assignment is made that the court erred "in rendering judgment in favor of the plaintiff and against the defendant, the same being contrary to law and the evidence" in the particular "that the testimony" of the president of the bank referred to "was to the effect that when he cashed the draft sued upon in this action he knew the defendant was the agent of Eisemann Bros., and that he took the draft and cashed it as the draft of Eisemann Bros., and not as the draft of the defendant." That presents nothing but the question just considered. No assignment is made assailing the findings. They, as made, support the judgment. The assignment that the court erred in rendering judgment for the plaintiff thus presents nothing. But the defendant's evidence does not help him. He testified that he was the agent of Eisemann Bros., wool buyers at Boston, and that he had negotiations with Cochran respecting the purchase of wool; that he made him an offer which Cochran accepted, and then, as he testified, drew a contract which Cochran signed and gave him an advance of $500, the draft sued on. The contract signed by Cochran was:

"I have sold to Eisemann Brothers of Boston, Mass., wool of about fifteen hundred head of my own sheep"—about 10,000 pounds, fourteen cents per pound, etc. After the contract was signed and the draft delivered, Cochran gave Goodfellow his, Cochran's address "as No. 1460 Major Avenue, Salt Lake City." Goodfellow, as he testified, could not thereafter find Cochran, and found that he did not live at the address given him. He thereupon became suspicious of the transaction and wired Eisemann Bros. not to pay the draft. But nowhere by his evidence does he show any notice to or knowledge of the bank as to these negotiations, or any of the circumstances thereof.

Another assignment relates to this: Neither party called Cochran as a witness. The court thereupon, on his own motion, called him and had him give testimony. It is not claimed that the testimony so given by him was **3** irrelevant, or immaterial, or incompetent. But at the conclusion of his testimony the defendant moved that it be stricken "for the reason that it was not offered by either the plaintiff or the defendant, and is not a part of the proof in this case." The court denied the motion. The ruling is complained of. We do not see anything to that.

Let the judgment be affirmed, with costs.

McCARTY, C. J., and FRICK, J., concur.