277 So.2d 404

**Carlton Jerry AYCOCK**

v.

**STATE.**

4 Div. 125.

Court of Criminal Appeals of Alabama.

Jan. 23, 1973.

Rehearing Denied March 13, 1973.

Smith & Smith, Dothan, for appellant.

William J. Baxley, Atty. Gen. and John A. Yung, Asst. Atty. Gen., for the State.

PER CURIAM.

Appellant was indicted along with Patricia Louise Neal Aycock in Houston County for murder in the first degree. He was there tried separately, convicted of the offense with fixation of punishment at life imprisonment. After due allocution, the trial court sentenced him in accordance with the jury's verdict and entered lawful judgment therefor. Appellant, represented at trial and here by court appointed counsel, appeals from the judgment.

## ON MOTION FOR CHANGE OF VENUE

Defendant by motion and a hearing thereon prior to trial contended that he could not receive a fair and impartial trial in Houston County for the reason that the news media of that County—newspaper, television and radio—in their reports of the alleged arrest of the defendant and of the crime charged against him generated so much prejudice against him that the trial should be moved to another county as authorized by Tit. 13, § 267, Code of Alabama, 1940, recompiled 1958.

We have examined the newspaper articles and other news publications in evidence. These newspaper articles carried routine news statements about the alleged offense and the arrest of the defendants. We are not impressed that they were sensational or carried undue emphasis on the alleged offense or any of the details. They were not in our judgment calculated to stir up per se undue emotions of their readers. They did not carry any editorial implications that the defendants were guilty of the crime. The television and radio accounts about the crime and the arrest of defendants likewise were free of implications of guilt. They, too, were just news items carrying usual publicity about the nature of the alleged crime and the arrest of the defendants.

On motion for a change of venue in a criminal case defendant has the burden of showing to the reasonable satisfaction of the court that a fair and impartial trial cannot be had and an unbiased verdict cannot reasonably be expected. Tiner v. State, 271 Ala. 254, 122 So.2d 738. Jurors, under the admonition of the trial court, usually enter the jury box free of influence and bias generated by the news media or otherwise and try a criminal case with an open mind that responds to the evidence adduced and free of bias or prejudice. We do not think that the defendant met the responsibility or burden cast upon him that he could not obtain a fair and impartial trial in Houston County. There was no error on the part of the court in overruling defendant's motion for a change of venue. Mathis v. State, 280 Ala. 16, 189 So.2d 564.

## MOTION FOR INVESTIGATION OF DEFENDANT'S SANITY, VEL NON

The trial court heard evidence ore tenus which was favorable and unfavorable to defendant's motion to have his sanity vel non investigated in accordance with Tit. 15, § 425, Code, supra. After considering the evidence the trial court overruled the motion. The judge hearing the motion had an opportunity to observe the defend-

ant in court. He was not impressed with the merits of the motion and denied it.

The Supreme Court of Alabama in Campbell v. State, 257 Ala. 322, 58 So.2d 623, said the following:

"No written report by three or more reputable specialist practitioners in mental and nervous diseases was filed or requested by the court nor was a written report of the Superintendent of the Alabama State Hospitals filed or requested by the court. The court is under no duty to appoint such a commission nor to direct the Superintendent to make a report. The court simply has the inherent right to seek these aids for advisory purposes when the court in its discretion thinks such aids will be helpful. Oliver v. State, 232 Ala. 5, 166 So. 615; Reedy v. State, 246 Ala. 363, 20 So.2d 528; Benton v. State, 245 Ala. 625, 18 So.2d 428; Burns v. State, 246 Ala. 135, 19 So.2d 450, certiorari denied 324 U.S. 843, 65 S.Ct. 589, 89 L.Ed. 1405."

We are unwilling to disturb the court's denial of the motion for a sanity investigation.

## ON THE MERITS

Defendant and co-defendant were living together in a trailer home in Dothan, in Houston County. Both defendants had been married prior to ceremonial procedure which purported to unite them as man and wife. The co-defendant, Patricia Louise Neal Aycock, was the mother of two children, one of whom, Linda Louise Carlson, age three, was the alleged victim of the defendant, Carlton Jerry Aycock. She was afflicted with cerebral palsy and had much difficulty walking.

The indictment of appellant contained four counts. Count One alleged that the appellant killed the child by hitting her with an instrument; Count Two charged that he killed her by throwing her upon and against a fixture, to-wit, a commode; Count Three asserted that he killed her by striking her with his hands and fists; and Count Four, by means to the grand jury unknown.

The evidence without dispute shows that the child received wounds in the trailer bathroom where her step-father, appellant, had taken her while her panties were wet. Defendant contended at the trial that he accidentally dropped the child; that she slipped out of his arms; and that the wounds were the result of the accident. The mother, a co-defendant, came into the bathroom and they both took the child into the living room where they undertook to administer first aid. The child got worse and they rushed her to a hospital in Dothan. The step-father, appellant, stayed in the automobile while the mother took the child to an emergency room where she received medical treatment at the hands of Dr. Flowers who was in the hospital and answered the emergency call. The child died a few minutes after receiving the emergency medical treatment.

According to the testimony of the State Toxicologist who performed an autopsy where there were numerous marks and bruises on the child's torso, chest, and abdomen. They were concentrated on the upper right chest and shoulder, and the right abdomen. A few were located on the left chest, a few in the middle back and several on the buttocks. After considerable testimony as to the width and length of the bruises and their respective locations, the witness testified that in his opinion "death in this case resulted from an intracranial hemorrhage, brain damage and shock, associated with trauma to the head." As to what he meant by "trauma to the head" the witness answered:

"Trauma would be violence to the head; in other words there is numerous evidence here of wounds or blows to the head, and these, in my opinion resulted in intra-cranial hemorrhage, and the death of the individual."

In reply to the question, "So it is your opinion that there were at least six

wounds, or injuries to that head, any of which could have resulted separately or severally, in the hemorrhage which you have described?" the toxicologist replied, "That is correct."

■ There were other witnesses who testified as to the multiple bruises on the deceased child. Several photographs of the deceased's body reflected bruises in corroboration of the oral testimony. There was no error in admitting these photographs in evidence. Allen v. State, 260 Ala. 324, 70 So.2d 644.

There was considerable testimony by the co-defendant, the mother of the deceased child, as to the condition of the child when she hurried to the bathroom after the child was wounded or injured; what she and the defendant did in an attempt to relieve her; and their determination to take her to the hospital for examination and treatment. Also she testified as to the good relationship between the defendant and the child and as to their mutual efforts from time to time to discipline the child, spanking it on occasions and on an occasion making it stand against the wall for considerable time as punishment. This was done in spite of the fact that the child's legs were diseased and crippled. We list some of the questions asked the mother and her answers:

"Q. . . . What happened between the child Linda Louise, and the defendant, Carlton Jerry Aycock, after he carried her into the bathroom?

"A. She slipped out of his arms and hit the back of the commode, which we had a plastic ring we put on the commode. When she hit that, her head hit the back of the commode.

"Q. All right, and then what happened?

"A. I went in there to see what happened, because I didn't know, maybe he had fallen or she had fallen or what, and he slapped her.

"Q. He slapped her. You mean the defendant, Carlton Jerry Aycock, slapped the child, Linda?

"A. Yes.

"Q. What did he hit her with?

"A. His hand.

"Q. His hand, was it his closed hand or his open hand?

"A. His open hand.

"Q. What, if anything, did you and Carlton Jerry Aycock do after he had slapped Linda Louise Carlson?

"A. He pushed me I hit the edge of the commode and he went on out.

"Q. Who carried the child out of the bathroom?

"A. I did.

"Q. Where did you take her?

"A. Into the bedroom.

"Q. Where did you then take her?

"A. We took her into the bedroom and then when he come in and put her pants on, talked to her about her Christmas tree and she talked to him, and the last words she said, 'Daddy, I love you.'

"Q. And then what happened?

"A. He took and stood her down, in order to get her, to walk her you had to prop her up against something to get her to walk her; and he propped her up and he turned around and pushed me—I went to reach for her and he pushed me —and he was going to walk her and he had noticed she had fallen. He hollared at me and I grabbed her by the ankles and shook her, because the doctors had told me if she ever passed out, because of her being premature, her bronchial tubes collapse, and she passed out and we picked her up.

"Q. She passed out, there in the bedroom?

"A. Yes, and I picked her up by the ankles and shook her.

"Q. And then what happened?

"A. He said, 'Let's get her to the hospital.'

"Q. All right. Did you take her to the hospital?

"A. Yes.

There was some evidence that defendant had a violent temper which he did not always control.

■ Suffice it to say, there was evidence from which the jury could reasonably infer that the defendant in some way as alleged in the indictment contrived to inflict injuries on the child's head causing her death while in the emergency room of the hospital. This evidence contradicted the evidence or contention of defendant that the child slipped from his arms and bruised her head on the bathroom fixture. The evidence was largely circumstantial but convinced the jury that the defendant deliberately inflicted wounds from which the child died and was guilty of first degree murder.

The trial court was free of error in refusing defendant's motion to exclude the evidence; also in refusing affirmative instructions that the jury acquit the defendant. The circumstantial evidence formed a pattern of guilt as charged in the indictment.

So far as this record shows, the mother was not an accomplice and was free of any fault in causing the death of her child. It is true that some of her evidence leaned toward the defendant, but some pointed toward his guilt. The mother at times was guilty of bad judgment in administering discipline to this afflicted and immature child. However, she was not in the bathroom when the defendant, according to the jury's verdict, inflicted the death wounds. There is no evidence in the record that she aided or abetted her husband in administering the fatal blows. The fact that the mother's testimony in some phases tended to exonerate the defendant does not fasten a homicidal act on her.

The State moved the trial court to place the mother on the witness stand. The trial court responded to this motion and made the mother the court's witness. This action of the trial judge is sanctioned in Anderson v. State, 35 Ala.App. 111, 44 So.2d 266, wherein this Court said:

"It is within the sound discretion of a trial judge, in the interest of truth and justice, to call to the stand and examine, or permit to be examined by both parties, any witness who may be able to shed light upon the issues, the court being careful to preserve an attitude of impartiality. Hunt v. State, 248 Ala. 217, 27 So.2d 186; Gomila v. United States, 5 Cir., 146 F.2d 372; Roth v. Moeller, 185 Cal. 415, 197 P. 62; State v. Horne, 171 N.C. 787, 88 S.E. 433; Pendleton v. Commonwealth, 131 Va. 676, 109 S.E. 201; Townsend v. City of Joplin, 139 Mo.App. 394, 123 S.W. 474; Merchants' Bank v. Goodfellow, 44 Utah 349, 140 P. 759."

The mother was called to the stand by the trial judge in the presence of two able and conscientious attorneys who had been appointed by the court to represent her. The attorneys assured the trial court that they were present to protect their client's interest. The mother answered affirmatively in response to the court's question that she had talked to her attorneys and had been advised by them in her case. The court propounded questions listed below to the mother and received the following answers:

"Q. Mrs. Aycock, the Court, on motion of the District Attorney, calls you to the witness stand and adopts you as a Court witness. You are not a witness appearing for either the State or the defendant, but under the information given to the Court, that you have knowledge of certain facts that in the interest of jus-

tice, should be made known to the jury, the Court adopts you as a State witness and I have some preliminary questions to ask you at this time: Are you the legal wife of the defendnat, Carlton Jerry Aycock?

"A. No, sir. We found out his divorce was not final.

"Q. Then, you say you are not his legal wife?

"A. (No answer).

"Q. You do not have to give any testimony that would incriminate yourself; if any question is asked to you, or of you, I am going to request that your lawyers, who are present in Court, immediately interpose an objection if this question would tend to incriminate this witness, herself.

"THE COURT: Is that understood, gentlemen, you, Mr. Ramsey, and you, Mr. Johnson?

"MR. RAMSEY: Yes, sir.

"MR. JOHNSON: Yes, sir.

"THE COURT: All right. (Examination continued by court)."

The trial court then proceeded to ask the witness several additional questions and then released her to the State and to the defendant for cross-examination.

We note here that counsel for defendant on trial did not interpose any objections to the witness's being called by the court to testify. No insistence was made that the mother did not have to testify because she was the wife of defendant on trial. Tit. 15, § 311, Code, supra, reads as follows:

"The husband and wife may testify either for or against each other in criminal cases, but shall not be compelled so to do."

█ It was not incumbent on the court below to advise the mother that she could not be compelled to be a witness against her husband. She had able counsel present to protect and advise her of her rights. The mother had already testified preliminarily that she was not the legal wife of the defendant because his divorce was not final. The defendant on the same issue of his lawful marriage to the witness testified:

"Q. Who did you live with there?

"A. Patricia Louise Aycock, Gerald W. Carlson, and Linda Louise Carlson.

"Q. In other words, you live there with your wife and her children?

"A. That is correct.

"Q. At least you considered her to be your wife at that time?

"A. Yes, sir.

"Q. You thought you were married?

"A. Yes, sir.

"Q. Have you found out since that you weren't married?

"A. Yes, sir.

"Q. Is that due to the fact that your former wife did not secure a divorce?

"A. That's right.

"Q. And you thought you had a divorce?

"A. That was my understanding, by telephone conversation, that I was divorced.

"Q. Where did you all get married?

"A. In Dothan, here in Dothan— right outside of Dothan, by the Justice of the Peace.

"Q. In other words, a ceremony was performed here in Houston County, Alabama?

"A. That's correct."

█ A man can have but one lawful wife living and so long as she is alive and

the marriage bond remains in full force, all his subsequent marriages, whether meretricious or founded on mistake, are void. Johnson v. Johnson, 245 Ala. 145, 16 So.2d 401.

■ Where, during the whole time a man and woman cohabited together as husband and wife, either he or she was legally married to another, no common-law marriage resulted from such cohabitation. Clark v. Glenn, 249 Ala. 342, 31 So.2d 507; Ala.Digest, Vol. 14, ⟨key⟩II, Marriage.

■ We see no error in the action of the trial court in calling the defendant-mother to the witness stand. According to her testimony and that of the defendant on trial, the two were not lawfully married, either by ceremonial or common-law marriage. Under such circumstances, the trial court was free of error in declining to hear the matter on the motion for a new trial. It was too late to hear this matter on the motion in view of the testimony of both parties during the trial that they were not lawfully married.

## ON MOTION FOR A NEW TRIAL

Ground 28 of the motion reads:

"The defendant was highly prejudiced by the verdict of the jury in that the jury venire was subject to a publication by the Dothan Eagle, a newspaper of general circulation throughout the county, in that on April 18, 1971, the said newspaper published, among other things about the defendant, the following:

" '. . . The child, Linda Louise Carlson, died Dec. 20, shortly after being admitted to Flowers Hospital in an unconscious state. The Aycocks were given polygraph tests in Montgomery a few days later, and were arrested Christmas Eve Day. . . .'

"Said defendant being jointly charged with his wife, Patricia Louise Neal Aycock, was greatly prejudiced in that the presumption being the defendants were guilty in view of the fact of the publication of their having been given polygraph tests and were arrested a few days later and that publication being exposed to the jury venire."

■ It does not appear that the results of these polygraph tests were offered in evidence; appellant does not so contend. This mere news item without more is not ground for a new trial.

■ Appellant contends in Grounds 12 and 13 of his motion that the district attorney failed to produce and allow his attorneys to inspect before trial pictures of the deceased child that were offered in evidence. It appears that the court's order allowing such inspection was limited to pictures that were in possession of the district attorney. The pictures in question were taken by the witness, State Toxicologist Raburn who lived in Auburn. They were in his possession and not delivered to the district attorney until about lunch time of the day the toxicologist appeared in court for the trial. They were available to defendant by proper process (subpoena duces tecum). It does not appear that the district attorney failed to obey the orders of the court with respect to the pictures. Grounds 12 and 13, supra, are therefore without merit.

■ Ground 27 of the motion is as follows:

"The Court erred in granting the following charge:

" 'And the defendant here, in this case, went into the trial of this case presumed to be innocent and that presumption of innocence remained and abided with him throughout the trial, until that presumption was overcome by evidence that was presented by the State from the witness stand,'

in that the said oral charge by the Judge led the jury to believe that the presump-

tion of innocence, which should have abided with the defendant throughout the trial, had been overcome by evidence before the jury had the opportunity to deliberate; said charge amounted to a comment upon the evidence by the trial judge, all to the prejudice of the defendant."

The contention that the use of the words, "was overcome," impressed the jury that the presumption of innocence attending defendant was overcome by evidence before the jury had an opportunity to deliberate is without merit. The trial court gave at defendant's request charge No. 4, which reads:

"The Court charges the Jury, that when a Defendant is placed on trial charged with the commission of a public offense the law says that he is presumed to be innocent of the offense. This Defendant entered this trial with this presumption of innocence in his favor, and this is a fact which is to be considered as evidence, and should not be disregarded. And this presumption of innocence remains with the defendant during this trial until overthrown by evidence which convinces the Jury of the Defendant's guilt beyond a reasonable doubt."

We think this charge corrected any misleading tendency of the oral charge quoted, supra, to which defendant excepted. Moreover, the trial judge stated, "I know I didn't say that."

Our search of the record and the brief of appellant, whose counsel was diligent at the trial and here, fails to reveal any prejudicial error in the rulings of the trial court at the trial or on the preliminary motions. The court did not err in overruling appellant's motion for a new trial.

The judgment in this cause is hereby affirmed.

Affirmed.

All the Judges concur.