TYSON, Presiding Judge.
The appellants, Jimmy Tate Raley and Janet McLain Flowers, were indicted along with George G. Miller for first degree murder. The jury found Raley guilty of first degree murder and fixed punishment at life imprisonment. The jury found. Flowers guilty of murder in the second degree and fixed punishment at twenty years imprisonment. The trial court then entered judgment which set sentences in accordance with these verdicts.
Mr. Gene Hendley of the United States Corps of Engineers testified that on September 8, 1976, he discovered the body of Charlie Leroy Brown. The body was located in a slue, fifteen or twenty feet from the bank of a lake in Henry County. There were four concrete blocks attached to the body with rope.
Mr. Richard Dale Carter of the Alabama Department of Toxicology testified that the rope removed from the deceased was identical to some rope found in appellant Raley’s home.
Dr. G. R. McCahan, Jr., of the Alabama Department of Toxicology and Criminal Investigation stated that on September 8, 1976, he performed a post-mortem examination of the deceased (Brown). Dr. McCahan testified that the cause of death resulted from ligature strangulation. Death occurred, according to Dr. McCahan, before the body was placed in the lake.
George Miller was also indicted for first degree murder along with Raley and Flowers. Miller testified that he had known Charlie Brown for two or three years. Miller stated that Raley and Flowers lived together at Holiday Shores in Henry County, Alabama. Miller testified that on September 3, 1976, Raley and Flowers came to his home around 4:00 p. m. According to Miller, the three of them drank gin for about an hour and then drove to the State Store where they purchased another half gallon of gin. Miller testified that the three of them also purchased some rifle cartridges and “stuff” at the Minit-Market to make a deer stew (R. 56). Around 5:00 or 5:30 p. m., according to Miller, the three of them (Miller, Flowers, and Raley) went to Raley’s home at Holiday Shores. On the way, Miller stated, they purchased some more gin. After arriving at Raley’s home, Miller testified, Raley and Miller shot cans in the back of Raley’s home on the lake. Around 9:00 p. m., Deputy Sheriff Horace Hancock arrived at Raley’s home. Sheriff Hancock told Raley and Miller that he had received complaints concerning the shooting and told them to stop firing their rifles. Miller testified that after Hancock left, Ra-ley told him to go pick up Brown and bring him back to Raley’s home. When Miller asked Raley why he wanted to see Brown, Raley replied that Brown had been “running his mouth” about dope, whiskey, and raping Flowers (R. 60). Miller stated that Brown came back to Raley’s house with him voluntarily. Brown got out of Miller’s car, according to Miller, and Raley knocked him to the ground, then asked him if he tried to rape Flowers. Brown, Miller testified, denied doing so, whereupon Flowers hit him with a drink bottle across the face. Raley, Miller testified, kicked Brown in the side several times while he was on the ground. Miller testified that he tried to stop Raley, but Raley told him to shut his mouth and go inside the house.
Miller stated that he went inside Raley’s house for about ten minutes and that when he came back outside, Brown was on the ground in an unconscious state. Raley, according to Miller, made him help carry Brown’s body to a small boat on the lake behind Raley’s house. Miller testified that Raley made him lay on his stomach in the boat and told him to keep his head down and his eyes closed. Then, according to Miller, Flowers, Raley and himself drove out to the interior of the lake and then back to Raley’s house. When the three of them returned to shore, Miller stated, Brown was *644 not in the boat. Raley, Miller testified, said he would kill Miller if he told anyone what happened.
Raley testified that Brown owed Miller some money. On September 3, 1976, according to Raley, Miller left his home around 10:00 p. m. and returned around 10:30 p. m. with Brown and someone called Carl. Raley indicated that Miller and Brown began arguing over the debt. Raley stated that he asked both to leave after they began fighting. Raley testified that they left, and the next morning when he awoke he discovered Miller sleeping on his couch. Miller, according to Raley, told him not to tell anyone that he had been with Brown that night.
Flowers testified basically as to the same set of facts as Raley. Flowers testified that Miller admitted killing Brown to her while he was in the Headland jail.
Cecil Brown, deceased’s thirteen year old son, testified that on September 2, 1976, he had seen Miller and Raley on the street. Miller, Cecil stated, told him that he and Raley were going to kill his father and throw him in the lake.
Bobby Earl Dansby testified that Miller and Raley came to his house on September 3,1976. Dansby stated that Miller told him that he and Raley were going to beat up Charlie Brown.
Lorene Turner testified that she shared a cell at the Henry County Jail with Flowers in the fall of 1976. Turner stated that Flowers admitted killing Brown while with Raley, despite Miller’s efforts to stop them.
I
Appellants contend that the trial court erred in its denial of appellants’ motions for change of venue where the court had made a prior judicial determination that the safety of one of the appellants (Flowers) was in peril in the county in which the case was to be tried and where the court entered an order directing the sheriff to transport the appellant (Flowers) out of the county for her safekeeping. In connection with this, the appellants claim error in not being informed of the court’s order directing the sheriff to transport the appellant out of the county for safekeeping.
On September 16, 1976, Judge Jerry M. White, Henry County Circuit Court, entered an order directing the sheriff of Henry County to transport the appellant (Flowers) to Julia Tutwiler Corrections Institution for Women until her trial, pursuant to Title 15, Section 268, Code of Alabama 1940. The grounds for removal in said order were (R. 415):
“1. That the above named defendant is the only female prisoner in the Henry County Jail at the present time.
“2. That the only cell available to separate her from male prisoners is directly in front of a window leading to the outside. “3. That law enforcement officers in the county have been informed of threats and ill will toward prisoner and fear for her safety.
“4. That the Sheriff of Henry County feels adequate protection and security cannot be provided for the prisoner in the Henry County Jail.”
The order was never executed and therefore appellant Flowers remained in the Henry County Jail until after her trial.
On October 7, 1976, the appellants filed their respective motions for a change of venue. On October 21,1976, the appellants’ motion for a change of venue was heard before the Honorable Jerry M. White, Circuit Judge, Henry County. At the hearing, Sheriff J. F. Welcher testified that the Henry County Jail did not have the facilities to accommodate a female prisoner. Sheriff Welcher stated that the only way to isolate Flowers from the male prisoners was to place her in a cell having a plexiglass (non-bullet proof) window. The interior of this cell is visible to anyone outside the jail. Sheriff Welcher testified that he had only seen one television account of the recovery of Charlie Leroy Brown’s body. The appellants, according to Sheriff Welcher, could receive a fair and impartial trial in Henry County. The court denied appellants’ motion for a change of venue. Judge White’s order pertaining to the transfer of appel *645 lant Flowers to Julia Tutwiler Corrections Institution for Women, pursuant to Title 15, Section 268, Code of Alabama 1940, was not made known to appellants or their counsel until November 8, 1976, after the trial of the case.
“The movant [for a change of venue] has the burden to reasonably satisfy the trial court that an impartial jury cannot be had in the circuit court to which the indictment is returnable.” Garrison v. State, 47 Ala.App. 536, 258 So.2d 68. See also Gilliland v. State, 291 Ala. 89, 277 So.2d 901; Tiner v. State, 271 Ala. 254, 122 So.2d 738; Dannelly v. State, 47 Ala.App. 363, 254 So.2d 434.
The television report of the crime was of a routine nature and was not in any sense of the word sensational. Aycock v. State, 50 Ala.App. 130, 277 So.2d 404. The appellants did not establish at the hearing that an impartial jury could not be had in Henry County. The fact that Sheriff Welcher was concerned with the jail’s facilities being able to accommodate a female prisoner is completely irrelevant as to whether or not an impartial jury could be had in Henry County.
There was no error in the appellants not being informed of the transfer order issued by Judge White pursuant to Title 15, Section 268, Code of Alabama 1940. Such order was not executed, and no prejudice was shown by the appellants due to its not being communicated to them. The grounds set out in the order, supra, have no bearing as to whether or not an impartial jury could be had in Henry County. The judicial determination that appellant Flowers be transferred to Julia Tutwiler Prison was not a “critical stage” of the trial, and therefore appellants’ absence from such determination was not error. Johnson v. State, Ala.Cr.App., 335 So.2d 663; Berness v. State, 263 Ala. 641, 83 So.2d 613.
II
Appellants contend that the trial court erred in not allowing appellants’ counsel to question the attorney of an alleged accomplice of these appellants about any concessions made by the district attorney to the accomplice where said accomplice was the State’s key witness.
Miller, the alleged accomplice, was asked on cross-examination the following question (R. 84):
“Q. Now, was he present when you made any sort of agreement with Mr. Sorrells and Mr. Whiddon and Mr. Hal-stead about testifying in this case?
“A. I haven’t made any agreement.
“Q. Are you telling — am I understanding you right, that you haven’t had any promise of anything on the indictment against you? If you testified, you would receive another treatment?
“A. Only that they would take my testimony into consideration.
“Q. Who said that?
“A. Mr. Sorrells.”
As may be seen, the possibility of bias or interest on the part of this witness was squarely before the jury for their consideration. Allen v. State, 55 Ala.App. 549, 317 So.2d 517.
During the cross-examination of Miller, counsel for appellant wished to question him concerning several written statements he had made to police officers (R. 103-105). The trial court allowed Mr. Lewis, Miller’s attorney, to confer with the district attorney outside the presence of the court in the hall. Upon returning, the district attorney gave appellants’ counsel the written statements with which to cross-examine Miller. Later in the proceedings, Mr. Lewis, Miller’s attorney, was called to the stand on behalf of the appellants and the following occurred (R. 235):
“Q. All right. This question: Did you have any discussion yesterday with the District Attorney about exhibits 2, 3, and 4?
“A. Yes. Yes, I think I did.
“Q. Now, what did the District Attorney tell you?
“MR. SORRELLS: Now, Judge, we object to that.
“THE COURT: I sustain the objection to that. Mr. Prestwood, he represents a de *646 fendant in this case, and I am not going to allow that. I sustain the objection to it.”
The question asked was so vague and indefinite as to the specifics of Lewis’ conversation that any irrelevant evidence could have been given in reply. The trial court cannot be put in error therefore for sustaining an objection. Jones v. State, 52 Ala.App. 184, 290 So.2d 251. The question was too broad and lacked specificity.
Ill
The appellants’ motion for a new trial, which was denied by the trial court, cites as grounds the issues already resolved by this opinion. The facts stated above clearly establish a prima facie case of first and second degree murder. We are unwilling to disturb the verdict of the jury and judgment of the trial court.
We have carefully examined the record and find same to be free of error. The judgment is due to be and is hereby
AFFIRMED.
All, the Judges concur.