## *In re* COX.

1. CRIMINAL LAW — VIOLATION OF CITY ORDINANCE — RIGHT TO JURY TRIAL—CONSTITUTIONAL LAW.

   One charged with a violation of a city ordinance regulating the use of public places, though subject to imprisonment therefor, is not within the constitutional guaranty of the right to trial by jury.

2. SAME—WAIVER.

   A provision of a city charter to the effect that, in prosecutions for violations of the local ordinances, a failure to demand a jury trial shall be deemed a waiver of the right thereto, is not repugnant to the Constitution.

3. SAME—UNREASONABLE PUNISHMENT.

   The fact that the legislature has seen fit to permit the sentence of felons to the Detroit house of correction, provided by that city for the reception of offenders against its ordinances, does not render an ordinance prescribing confinement in that institution as the penalty for its violation void for unreasonableness.

*Certiorari* to recorder's court of Detroit; Phelan, J. Submitted March 11, 1902.   Decided March 13, 1902.

*Habeas corpus* and ancillary writ of *certiorari* by Blanche B. Cox to secure her release from imprisonment in the Detroit house of correction.   Writs dismissed.

*James H. Pound*, for petitioner.

*Charles E. Love*, Assistant Corporation Counsel, for respondent.

HOOKER, C. J.   Blanche B. Cox, a leader in a religious society known as the "Salvation Army," was convicted of violating an ordinance of the city of Detroit which restricts the use of public places.   The validity of this ordinance is attacked, but this was sustained in the recent

case of *Love* v. *Judge of Recorder's Court*, 128 Mich. 545 (87 N. W. 785). The defendant was tried by the recorder without a jury, and upon conviction she was sentenced on the 3d day of March to pay a fine of $15 forthwith, in default of which she be confined for 12 days in the Detroit house of correction, and that, pending certain proceedings in the Supreme Court, she be remanded to the sheriff of Wayne county. Her counsel questions the validity of the conviction, upon the ground that she should have been tried by jury; and that of the sentence, upon the ground that, in providing for imprisonment in the Detroit house of correction, it is unreasonable, the house of correction being a place where felons are confined.

The fourteenth amendment provides that "no State shall deprive any person of life, liberty, or property without due process of law;" and our own Constitution, of earlier date, contains a similar provision. Due process of law is quite uniformly held to give to all persons on trial upon criminal charges the right of jury trial; but it has, perhaps, been as uniformly decided that trial by jury was not included in due process of law as applicable to violations of municipal by-laws, proper, which relate to acts and omissions that are not embraced in the general criminal legislation of the State, and punishable by fine. Among these are municipal regulations concerning markets, streets, waterworks, parks, and various other matters regarding which local conditions and interests demand different regulations than are called for in rural communities; and many authorities hold that such acts and omissions are not crimes and misdemeanors to which the constitutional right of trial by jury extends. Due process of law antedated our Constitutions, which protect and preserve it, as pre-existing, and such due process of law recognized summary enforcement of municipal by-laws. In England the distinction has been between offenses known as "pleas of the crown," when the trial must be by jury, and petty offenses, punishable by fine or amercement. Judge Dillon, in discussing the question, says:

"If no imprisonment for the violation of the municipal regulation is authorized, it is clear that the prosecution is not criminal, and there is no constitutional right to a trial by jury.   But if a limited imprisonment on default of paying a fine, or even as part of the punishment, is authorized by the legislature, this does not necessarily make the case, if it be for a violation of a mere municipal regulation, one to which the right of a trial by jury extends. The question depends, rather, we think, upon the intrinsic nature of the offense." 1 Dill. Mun. Corp. (4th Ed.) § 433.

See, also, Id. § 411.

There is some conflict of authority when the violations are punishable by imprisonment, and where the proceedings are in form criminal, but we think the weight of authority sustains summary conviction, even in such cases.   See 1 Steph. Hist. Cr. Law, chap. 4, p. 122.   In *Byers* v. *Com.*, 42 Pa. St. 89, it was held that a person arrested and tried under an ordinance of the city of Philadelphia providing for the commitment to prison of professional thieves, burglars, etc., had not the right to trial by jury.   See, also, *Rhines* v. *Clark*, 51 Pa. St. 96, and *Callan* v. *Wilson*, 127 U. S. 553 (8 Sup. Ct. 1301).   This court has held that cases under municipal ordinances proper do not rise to the dignity of criminal proceedings, and that neither a writ of error nor exceptions before sentence would lie.   *People* v. *Jackson*, 8 Mich. 78, 110, 262; *Cooper* v. *People*, 41 Mich. 403 (2 N. W. 51); *Webster* v. *City of Lansing*, 47 Mich. 192 (10 N. W. 196). In this connection, see *People* v. *Vinton*, 82 Mich. 39, 45 (46 N. W. 31); *Village of Northville* v. *Westfall*, 75 Mich. 603 (42 N. W. 1068).

As a corollary to the absence of a constitutional right of trial by jury, it is competent for the legislature to provide that a failure to demand a trial by jury should be a waiver of the right to such a trial.   Again, in *Ward* v. *People*, 30 Mich. 116, it is held that trial by jury may be waived, and this doctrine has been since recognized in *City of Grand Rapids* v. *Bateman*, 93 Mich. 135 (53 N. W. 6),

and *People* v. *Steele*, 94 Mich. 437 (54 N. W. 171); and while the language of Mr. Justice CHRISTIANCY in *Ward* v. *People*, *supra*, indicates that a waiver cannot be implied, but must be express, his associates did not assent to so strict a rule, and the question was not passed upon. The statute applicable to this case provides, in substance, that a failure to demand a jury trial shall be a waiver of the right, and we think it competent for the legislature to prescribe a rule upon this subject. It would not be in accord with common experience to suppose that one sufficiently posted in criminal procedure to stand mute, or to advise a client to do so, would be ignorant of the right to jury trial, and no hardship can be expected to follow such a law.

The other questions relate to the reasonableness of an ordinance providing for confinement in the house of correction. This is a penal charge. The ordinance imposes a penalty upon certain conduct. The law has never drawn a line between acts *malum prohibitum* and acts *malum in se*, as to the place of punishment. The public interest may require that private persons forego certain of their rights, and may punish acts involving no moral turpitude; and a conscientious belief that the law is unwise or unjust does not excuse disobedience. If, as counsel sought to urge upon us, the method adopted by the society of which the prisoner was a member was to seek men upon the highways and in the public places, by holding public meetings there, they were still amenable to the will of the majority in the regulation of such places, just as any other person or society is. We can discern a great difference between a common tramp, vagrant, or disorderly person, and this respondent, and appreciate her reluctance to be put on a level with them as to place of confinement; but a community cannot have a different place of confinement for each class of offenders. The jail is the place where all petty offenders expiate their offenses, or await trial for more heinous crimes. The city of Detroit has provided a house of correction for the reception of offend-

ers against her ordinances. The legislature has seen fit to permit felons to be sentenced to the same place. The expediency of such legislation is a question for the legislative branch. It might be a wise public policy to pass laws for the separation of classes, and, to some extent, this has been done; but the lockup or jail has always been the place of confinement for all classes of petty offenders, regardless of their degrees of degradation, and as to adults, at least, there is some force in the suggestion that there is a way to avoid such contamination, and that is by obedience to law, even though it be believed to be unjust or invalid, until it can be repealed, or tested in some other way. We cannot assume, however, that it is the practice of the city authorities to confine civil debtors, juvenile offenders, or others entitled to consideration, with the greater criminals or lower characters, although in the same building or public institution. This record raises no question of that kind, and, being silent upon the subject, we must assume that the officers of the house of correction obey the law in the disposition of offenders committed to their custody.

We have attempted to discuss all reasons suggested which would entitle the defendant to a discharge from imprisonment.

The writs will be dismissed.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., did not sit.