PEOPLE v. DICKERSON.

1. CONSTITUTIONAL LAW—DUE PROCESS OF LAW.

The constitutional guaranty that no person shall be deprived of life, liberty or property, without due process of law, preserves to the people rights which were enjoyed under the common law, and guarantees such exercise of governmental power as is sanctioned by settled maxims of law, under such safeguards for the protection of individual rights as those maxims prescribe.

2. SAME — DEPARTMENTS OF GOVERNMENT — PROSECUTING ATTORNEY.

   The preparation for and conduct of criminal proceedings by the prosecuting attorney are acts executive and administrative in character.

3. SAME.

   The prosecuting attorney is a constitutional officer whose executive duties may not be conferred by the legislature on the judiciary.

4. SAME—STATUTES — EXPERT AND OPINION EVIDENCE — CRIMINAL LAW.

   Section 3 of Act No. 175, Pub. Acts 1905, providing for the appointment of expert witnesses by the court in cases of homicide, is unconstitutional, since the act of appointment is in no sense a judicial act, is carried out without notice to respondent or the prosecuting attorney, since the names of the witnesses are not indorsed on the information, and the accused is prevented from knowing the names of witnesses who will testify against him, and since the experts receive a certificate of candor, ability, and truthfulness not given to any other witnesses in the case.

Error to the recorder's court of Detroit; Connolly, J. Submitted October 21, 1910. (Docket No. 149.) Decided December 30, 1910.

Frank M. Dickerson was convicted of the charge of murder. Reversed.

*Frederick E. McCain,* for appellant.

*Ormond F. Hunt, amicus curiæ,* appointed by trial court.

*Franz C. Kuhn,* Attorney General, *Philip T. Van Zile,* Prosecuting Attorney, and *Arthur W. Kilpatrick,* Assistant Prosecuting Attorney, for the people.

BROOKE, J. Respondent was convicted of murder in the recorder's court for the city of Detroit, and brings his case to this court for review. During the trial, it became apparent that the respondent claimed immunity from punishment because of alleged lack of mental capacity.

The court thereupon, acting under the mandate contained in section 3 of Act No. 175 of the Public Acts of 1905, proceeded to appoint two medical experts. The appointment was made known to the jury, and the experts gave testimony. The experts were appointed, and their testimony received, over the objection of respondent, and exceptions were duly taken. The only question raised upon this record is the constitutionality of the act in question, which is as follows:

" An act to regulate the employment of expert witnesses.

" *The people of the State of Michigan enact:*

"SECTION 1. No expert witness shall be paid or receive as compensation in any given case, for his services as such, a sum in excess of the ordinary witness fees provided by law, unless the court before whom such witness is to appear or has appeared awards a larger sum; and any such witness who shall directly or indirectly receive a larger amount than such award, and any person who shall pay such witness a larger sum than such award, shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding one thousand dollars, or by imprisonment in the county jail not to exceed one year, or both, in the discretion of the court, and may further be punished for contempt.

"SEC. 2. No more than three experts shall be allowed to testify on either side as to the same issue in any given case except in criminal prosecutions for homicide: *Provided*, the court trying such case may in its discretion permit an additional number of witnesses to testify as experts.

"SEC. 3. In criminal cases for homicide where the issues involve expert knowledge or opinion the court shall appoint one or more suitable disinterested persons, not exceeding three, to investigate such issues and testify at the trial; and the compensation of such person or persons shall be fixed by the court and paid by the county where indictment was found, and the fact that such witness or witnesses have been so appointed shall be made known to the jury. This provision shall not preclude either prosecution or defense from using other expert witnesses at the trial.

"SEC. 4. This act shall not be applicable to witnesses testifying to the established facts or deductions of science,

nor to any other specific facts, but only to witnesses testifying to matters of opinion.

"Approved June 7, 1905."

Sections 1, 2, and 4 of the act are not attacked, and we wish it to be understood that no opinion is hereinafter expressed as to the validity of those sections. Our attention is directed solely to the provisions of section 3, and that section alone will be discussed. The objections urged are set out in the people's brief as follows:

(1) Is Act No. 175, Pub. Acts 1905, unconstitutional (*a*) in that it embraces more than one object? or (*b*) Is the title to the act sufficiently broad to embrace its object?

(2) Does the act infringe upon the respondent's right to due process of law, as guaranteed him by the State and Federal Constitutions?

(3) Does the act violate the provisions of section 16, Art. 2, of the State Constitution?

We will consider these objections in their order.

1. The title of the act is: "An act to regulate the employment of expert witnesses." It will be noted that this title is extremely simple, general, and comprehensive. The word "regulate" has frequently received judicial interpretation, and under that term very broad powers have been exercised. *Westgate* v. *Township of Adrian*, 161 Mich. 333 (126 N. W. 422), and cases cited. But it is urged that the term, broad as it is, must have reference only to something which has theretofore existed—that it imparts no power of creation. It is further argued that section 3 delegates to the judicial department of government a new and incongruous power, and in effect *creates* a new class of witnesses—that this is in no sense regulation. In view of what we shall have to say later concerning the provisions of this section, we find it unnecessary to determine whether or not this contention of the respondent is correct.

2. Section 16 of article 2 of the Constitution of 1909 [section 32, Art. 6, Const. of 1850], among other things, provides:

"No person shall  *  *  *  be deprived of life, liberty or property without due process of law."

"Due process of law" has been variously defined. Mr. Cooley in his work on Constitutional Limitations (7th Ed. p. 502) adopts the definition given by Daniel Webster in the *Dartmouth College Case*, 4 Wheat. (U. S.) 519, as follows:

"By the law of the land is most clearly intended the general law, a law which hears before it condemns; which proceeds upon inquiry and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, property, and immunities under the protection of the general rules which govern society. Everything which may pass under the form of an enactment is not, therefore, to be considered the law of the land."

This provision of the Constitution has been frequently discussed in the decisions of this court. Among those may be cited the following: *Parsons* v. *Russell*, 11 Mich. 113 (83 Am. Dec. 728); *Hamilton* v. *People*, 29 Mich. 173; *Weimer* v. *Bunbury*, 30 Mich. 201; *Swart* v. *Kimball*, 43 Mich. 443 (5 N. W. 635); *Risser* v. *Hoyt*, 53 Mich. 185 (18 N. W. 611); *People* v. *Harding*, 53 Mich. 481 (19 N. W. 155); *In re Cox*, 129 Mich. 635 (89 N. W. 440). See, also, *Den* v. *Improvement Co.*, 18 How. (U. S.) 272; 8 Cyc. p. 1080 *et seq.*, and cases there cited. From an examination of the authorities, it is apparent that this constitutional guaranty simply preserves to the people rights which had existed for centuries, and which had been enjoyed according to the course of the common law. It means such an exercise of governmental power as is sanctioned by settled maxims of law, under such safeguards for the protection of individual rights as those maxims prescribed. It becomes pertinent, therefore, to ascertain what settled maxims and safeguards—what "general rules which govern society"—are applicable to a criminal prosecution such as is here under consideration. Wherever the common law is in force, the parties to a criminal action have been, upon the one side, the crown

or the people, and upon the other, the accused. In England and her colonies, the crown is represented by an official duly appointed by it, whose duty it is to prosecute. In this country, the duties of this official have been assumed and discharged by the prosecuting attorney, who is, himself, a constitutional officer. Const. of 1909, Art. 8, § 3 [Const. of 1850, Art. 10, § 3]. From the foundation of our government, it has been the duty of the prosecuting attorney to prepare the case for the people. He, and he alone, must determine what witnesses shall be sworn to establish the case he presents. In case of disability or the necessity for assistance, the statute provides for substitution or assistance as the case may be, upon proper application, but the principle of responsibility remains the same, though the service may, by reason of necessity, be temporarily performed by one clothed with statutory authority. See Wigmore on Evidence, §§ 1286 and 2483. We think it clear that the preparation for and conduct of the trial on behalf of the people are acts executive and administrative in character. Under our Constitution, which jealously separates the powers of government into legislative, executive, and judicial departments, the powers and duties properly belonging to one department cannot by statutory enactment be granted to or imposed upon another department. *Houseman* v. *Kent Circuit Judge*, 58 Mich. 364 (25 N. W. 369); *Locke* v. *Speed*, 62 Mich. 408 (28 N. W. 917); *City of Manistee* v. *Harley*, 79 Mich. 238 (44 N. W. 603); *Allen* v. *Board of State Auditors*, 122 Mich. 324 (81 N. W. 113, 47 L. R. A. 117, 80 Am. St. Rep. 573).

The power of selecting and appointing witnesses who shall, after appointment, acquaint themselves with the matter in controversy, and testify concerning the same, is in no sense a judicial act, and, if exercised by the court in accordance with the mandate of section 3, would entirely change the character of criminal procedure, and would seriously endanger, if not absolutely destroy, those safeguards which our Constitution has so carefully en-

acted for the protection of the accused. The most cursory examination of section 3 will disclose its vice. The court is directed to appoint one or more suitable, disinterested persons to investigate and testify. This appointment is to be made without notice to either the prosecuting attorney or the accused. The reasons which impel the court to make the selection are not of record and can never be known. The names of the selected experts cannot be indorsed upon the indictment by the prosecuting attorney as required by law, for he himself is as ignorant of their identity as is the accused. The right of one accused of crime to know in advance the names of the witnesses who will testify against him and to examine into their character, means of knowledge, etc., in order that he may properly prepare his defense, is a right as ancient as our criminal jurisprudence. The court is commanded to make known to the jury the fact of the appointment, and that his appointees have been found by him to be suitable and disinterested. The section then provides that other experts may be sworn by either prosecution or defense. This is an idle provision, for in the face of the certificate of character, fitness, and ability given to the court experts by the court, experts summoned by either side would receive but scant consideration at the hands of the jury; their testimony would be swept aside in a breath. Juries are most anxious to ascertain the opinion of the court as to the guilt or innocence of the accused, and, ordinarily, more than willing to adopt that opinion as their own. Trial courts, therefore, in doubtful cases, have jealously guarded their own opinions in order that juries might determine controlling facts uninfluenced by the mental attitude of the judge.

The expert witnesses provided for by this section testify under a sanction which gives to their testimony practically the same weight as if it were delivered by the court itself, and if that testimony, being against the accused, were either wilfully false or ignorantly mistaken, its baneful results would be appalling. To give to the testi-

mony of a witness or witnesses this extraordinary certificate of candor, ability, and truthfulness, while the other testimony in the case must be judged by the jury by ordinary standards, is to subvert the very foundations of justice.   In *People* v. *Vanderhoof*, 71 Mich. 158 (39 N. W. 28), this court said:

"The charge of the court virtually put the evidence of these doctors and professors upon a higher plane than the other testimony, which was manifestly wrong."

In *People* v. *Seaman*, 107 Mich. 348 (65 N. W. 203, 61 Am. St. Rep. 326), the following language is used:

"An expert witness is to be judged from the same standpoint as any other witness."

In *People* v. *Holmes*, 111 Mich. 364 (69 N. W. 501), we said:

"When the question of insanity is to be submitted to the jury, the testimony which is offered to support the claim should be treated with the same respect as that offered to establish any other fact."

We do not overlook the fact that the statute here considered was designed to correct an evil long recognized as tending to bring the administration of the criminal law into disrepute, in cases where insanity is urged as a defense, but we are of opinion that the true remedy for this evil rests in the development of a livelier sense of responsibility to the public for the proper and decent administration of justice on the part of both the legal and medical professions, rather than in revolutionary legislation.   That both professions recognize and deplore the existence of the evil, there can be no doubt, and recent activities in both lend reason for hoping that the scandal which has often attended the introduction of expert testimony will, in the future, cease to be a reproach in the administration of criminal law.

In view of our conclusions upon the second point discussed above, it is unnecessary to give attention to the

third ground urged.    We must hold section 3 unconstitutional.

The judgment is reversed, and the respondent remanded to the custody of the sheriff of the county of Wayne, to be tried again.

Hooker, Moore, McAlvay, and Blair, JJ., concurred.