[Crim. No. 2053. Second Appellate District, Division Two.—June 1, 1931.]

THE PEOPLE, Respondent, v. CHESTER J. STRONG, Appellant.

Richard H. Cantillion and Vernon R. Hamilton for Appellant.

. U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

ARCHBALD, J., *pro tem.*—Defendant was accused of robbery by an information containing two counts. On October 30, 1930, he appeared before the superior court for plea without counsel, and, standing mute, a plea of "not guilty" was ordered entered as to each count. On December 9th he appeared with the public defender as counsel

and entered an additional plea of "not guilty by reason of insanity" to each count. The trial of the issues raised by the pleas "not guilty" resulted in a verdict of guilty on both counts of first degree robbery, whereupon the same jury was sworn to try the issues raised by the last pleas entered, which resulted in verdicts finding the defendant sane at the time of the commission of the offenses charged in the information. Motions for new trial were made and denied and the court pronounced judgment on the verdicts. From the order denying his motions for new trial and from the judgments defendant has appealed.

It appears that the court, under section 1027 of the Penal Code, appointed Dr. Benjamin Blank and Dr. Martin Carter to examine defendant and that Dr. Blank was called as a witness by the district attorney and testified that in his opinion the defendant was sane. The prosecutor brought out the fact, without objection, that Dr. Blank had been appointed by the court to make such examination, and several times thereafter, also without objection, he alluded to such appointment, as, for instance, in the following question: "Now then, on the occasion of the court appointing you to examine him as to his mentality, was there any other physician appointed at the same time you were?" It is the contention of appellant (1) that said section 1027 is a delegation to the judicial department of the state of powers belonging to the executive; (2) that such appointment by the court was in effect an indorsement of the witness by it and substantially deprived defendant of a fair and impartial trial and so denied him due process of law; and (3) that the section in effect compels a defendant to give evidence against himself—all in violation of section 1, article III, and section 13, article I, of the California Constitution, as well as the Fourteenth Amendment of the federal Constitution.

In support of his first contention appellant cites the cases of *People* v. *Bird*, (Cal. App.)* 292 Pac. 684, and *People* v. *Dickerson*, 164 Mich. 148 [Ann. Cas. 1912B, 688, 33 L. R. A. (N. S.) 917, 129 N. W. 199].

---

*REPORTER'S NOTE.—A hearing was granted by the Supreme Court in the case of *People* v. *Bird*, and the final opinion of the Supreme Court is reported in 212 Cal. 632 [300 Pac. 23].

In the case of the former we fail to see its application here. With the latter, while we must admit that it holds unconstitutional a statute of Michigan which is quite different from the California statute but which, like ours, authorized the appointment of experts by the court, we cannot agree. Mr. Wigmore, the learned writer on the law of evidence, says of such decision: "It is a pity that the court suffered such a severe attack of dikastophobia on the sight of this harmless statute. As the history and authorities of the present subject are ignored in the opinion and as its fantastic logic would hardly be followed elsewhere, no further notice of its contents is needed." (5 Wigmore on Evidence, 2d ed., sec. 2484.)

We find in the books many criticisms of the system of parties employing their own expert witnesses, some saying that the public and juries have lost faith in such evidence. Mr. Wigmore says of such loss of confidence: "The principal feature of the breakdown seems to be the distrust of the expert witness, as one whose testimony is shaped by his bias for the party calling him. That bias itself is due, partly to the special fee which has been paid or promised him, and partly to his prior consultation with the party and his self-committal to a particular view. His candid scientific opinion thus has no fair opportunity of expression, or even of formation, swerved as he is by this partisan committal. The remedy therefore seems to lie in removing this partisan feature, i. e., by bringing him in court free from any committal to either party. Such a status for the expert would indeed not secure perfection. But it can be asserted that no measure can be effective which does not secure such a status for the expert witness. How can this be done? The essential features, in the abstract, are that the state, not the party, shall be the one to pay his fee, and that the court, not the party, shall be the one to select and summon him." (1 Wigmore on Evidence, sec. 563.) Our own Supreme Court has said of the situation: "The remedy can only come when the state shall provide that courts and not the litigants shall call a disinterested body or board of experts who shall review the whole situation and then give their opinion with their reasons therefor to the court and jury regardless of the consequence to either litigant. So and so only can it be hoped to remove

the estimate of infirmity which attaches at the present time to this kind of evidence.'' (*Estate of Dolbeer,* 149 Cal. 227, 243 [9 Ann. Cas. 795, 86 Pac. 695, 702].) In 1929 the legislature adopted section 1027 of the Penal Code with the idea of trying to remedy some of the defects by providing a witness whom either or both parties might use, appointed by the court and paid by the county, and who would be free from any possible sentiment of loyalty to either side or to anything except the truth as it appears to a trained mind with no partisan affiliations. An appointment of that character is in aid of truth, which the court is seeking in order to determine the controversy with justice to all; and while it may be admitted that the act of appointment is not a judicial act in and of itself, in the constitutional sense, no more is it an executive act in that sense, aiding as it does the exercise of the judicial power of the state in its search for truth.

The Constitution in dividing governmental powers into legislative, executive and judicial was never intended to vest solely in the judicial branch *all* duties requiring the exercise of discretion and judgment, any more than it was intended to give to the executive department *every* function of a purely administrative nature. The act of appointing a person to perform a designated duty would seem to involve not only an administrative function but one judicial as well, if the appointee is to aid in the exercise of the duties of the judiciary. The success of the appointment would seem to depend to a far greater extent upon the skilful use of such judgment than upon the mere act of making the decision known, and yet no one would think of asserting that it is the exercise of judicial power in the constitutional sense, which we understand to mean the jurisdiction to hear and determine controversies between adverse parties and questions in litigation. (*Daniels* v. *People,* 6 Mich. 380, 388; *United States* v. *Ferreiria,* 13 How. (U. S.) 40, 47 [14 L. Ed. 42, 45].) No one questions the authority of a judge to appoint referees and appraisers as occasion requires, yet in so doing he is without doubt exercising a function that is executive in nature, but the power is exercised in aid of the court in performing its constitutional duty to hear and determine controversies and is properly judicial under the Constitution. It would

not seem to require further argument to show that such an appointment as is delegated to the court by the legislature in section 1027 is neither logically nor constitutionally a part of the function of the executive department of the state.

In 1910 a similar objection was raised to that feature of the Juvenile Court Law investing the courts with the power to appoint probation officers, and the reasoning of the court there applies with full force in the instant case. The language referred to is found in the case of *Nicholl* v. *Koster*, 157 Cal. 416, at page 422 [108 Pac. 302, 305], where the court says: "The remaining objection is that the appointment of these probation officers is an act of the executive department of the state and that the judge of the superior court, being an officer of the judicial department of the state, cannot be vested with power to exercise functions belonging to the executive department. Article III of the Constitution provides that 'no person charged with the exercise of powers properly belonging to one of those departments shall exercise any functions appertaining to either of the others, except as in this Constitution expressly directed or permitted. In *People* v. *Provines*, 34 Cal. 525, this court decided that this provision of the former Constitution, which is in the identical language above given, referred to the respective departments of the state government and not to the local county and municipal governments which the legislature might establish. The superior court is one of the courts of the state and the judge of that court may perhaps be classed as a person charged with the exercise of powers belonging to the judicial department of the state. But the probation officers in question are not officers of the state government. They are minor officers of the local county government. The appointment of such officers is not necessarily a part of the duties or functions of the executive department of the state government, according to the system outlined in the Constitution. Perhaps the legislature, after creating such county officers, could authorize the state executive to appoint persons to fill them, but it is no part of the constitutional scheme of government that such appointments should be made by state officials. The judge of the superior court, when he appoints these probation officers, does not exercise functions intended to be described

in the Constitution as those appertaining to the executive department of the state. It is apparent that the act does not conflict with this provision of the Constitution.''

It would be impossible for the different departments of the state to function if the very broad designation of judicial and executive powers, apparently contended for by appellant, were applied strictly, as it will be readily seen that the executive department must constantly use judgment and discretion to function and the legislative and judicial departments must also necessarily use powers that would under such classification be executive. Without so doing the departments could not properly carry on their constitutional powers. In our opinion, therefore, the true test lies not in the answer to the question, ''Is the act complained of one which by its nature partakes more of the character of the work delegated by the Constitution to another department of state than that to which the officer exercising the act belongs?'', but does lie in the answer to the following: ''Is the act complained of outside the powers delegated to the officer by the Constitution, and not merely an act necessary or helpful in enabling him to perform such function?''

In 1925 the legislature adopted a general statute providing for the appointment by the court, on motion of either party or on its own motion, of one or more experts in any case, civil or criminal, in which expert evidence appeared to be required. (Sec. 1871, Code Civ. Proc.) All of the arguments made by appellant in his second contention herein would seem to apply with equal force against the constitutionality of that section as well as section 1027 of the Penal Code. Appellant urges that such appointment by the court is in effect an indorsement of the character, ability and impartiality of such a witness, which amounts to a deprivation of a ''fair and impartial trial'' and deprives the party as to whom the testimony of such witnesses is not favorable of the ''due process of law'' guaranteed by the state and federal Constitution. In the case of *People* v. *Cornell*, 203 Cal. 144 [263 Pac. 216], an expert witness was appointed under section 1871, *supra*, and the court at the time of appointment and in the presence of the jury commented on the experience, ability and impartiality of such expert, as well as the fact that he had theretofore acted as an expert alienist in the superior courts of

the county, which appellant contended was prejudicial error. The effect of such language was the same there as appellant contends for here, and it would seem that if it was prejudical error, the result would be to prevent a defendant from having a fair trial, which counsel contend is the situation here, notwithstanding the fact that objection to such action was not made on the constitutional ground as in the instant case. The court says, on page 146 of the opinion: ''The defendant, while objecting through his counsel to the appointment of said expert by the court, placed such objection upon the ground that the defendant had secured the services of his own experts and hence was not in need of said or any appointive alienist, but he neither then nor since offered any objection to the character, qualifications or impartiality of the chosen expert. It would seem that no prejudicial injury was suffered by the defendant, either through the making of such appointment by the court *or by its remarks touching the qualities of the proposed appointee.*'' (Italics ours.) It may be said that the objection made in that case did not raise the question we are concerned with here, but it is to be noted that the court plainly says that, it not being shown that the alienist appointed was not qualified and not impartial, the defendant was not prejudiced either by the appointment or by the very fine indorsement given by the court; so we fail to see how the indorsement complained of in the instant case could in any way have deprived appellant of a fair and impartial trial. The question came before the court again in *Estate of Hastings,* 206 Cal. 524 [274 Pac. 973], wherein the trial court appointed an expert witness under section 1871 and the objection was raised on appeal that the enactment in question conferred upon the court non-judicial functions and in effect allowed it to decide as to the credibility of the witness. The first point is the same as appellant's first contention here, and the second would seem to amount to the same thing as appellant's second contention. We may remark in passing that appellant in that proceeding cited the same case relied on here, i. e., *People* v. *Dickerson, supra.* That case is not referred to in the opinion in *Estate of Hastings, supra,* but the judgment of the lower court was affirmed. It would seem that the constitutionality of section 1871 was established thereby and

by necessary inference the constitutionality of the section complained of here.

We fail to see any merit in the contention that under section 1027 a defendant is compelled to be a witness against himself. Nothing in the section compels him to submit to an examination. If he does so the action is purely voluntary. To assert his constitutional rights all that is required is for him to stand mute, and possibly, also, to refuse to permit the examination, when the appointed expert undertakes to proceed; and whether he does so or not there is no compulsion.

Judgments and orders affirmed.

Works, P. J., and Thompson (Ira F.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 16, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 29, 1931.