27 So.2d 186

**HUNT v. STATE.**

3 Div. 433.

Supreme Court of Alabama.

May 9, 1946.

Rehearing Denied Aug. 2, 1946.

Gerald & Gerald, of Clanton, and John A. Dickinson, of Prattville, for appellant.

Wm. N. McQueen, Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

FOSTER, Justice.

Appellant was tried and convicted of murder in the first degree, and his punishment fixed at death. His pleas were not guilty and not guilty by reason of insanity.

There was no conflict as to the conduct of appellant, and no contention that he did not kill the person charged, his estranged wife, without justification. He seriously sought to sustain his plea of not guilty by reason of insanity, and offered much evidence to that effect.

In rebuttal the State offered witnesses, some of whom were non-expert and some qualified as expert.

A. C. Anderson was a non-expert who for a year and ten months was foreman supervising the work of appellant, said to be a skilled worker for the Continental Gin Company, doing work more and better than the average. The State's counsel then asked him the following question and he answered with no objection then made. "Did you notice anything abnormal, eccentric or peculiar, out of the ordinary about him"? The answer was "nothing abnormal, no." After some cross-examination by appellant's counsel, he moved to exclude the answer of witness, because (1) general grounds, (2) does not tend to shed light on the issues, (3) it would not shed light on the issue of insanity. The court overruled the motion and defendant excepted.

J. T. Post was also a non-expert witness for the State. He knew appellant all his life; lived about half mile away; both worked for the Continental Gin Company, and rode together back and forth to work from the latter part of November 1944 until December 18, 1944, the date of the killing. Before that time witness had been in the Army for thirteen months, and had no contact with him. Before that time he knew him, but never had any dealings with him, but talked with him occasionally, and heard him talk. Rode with him every day to work after "we started," except Sunday. He did the driving. He drove all right, and knew how to handle a car. "On such trips we would talk." It took thirty or thirty-five minutes to make the trip. On the morning of the 18th, they rode together. He did not go in to work, and did not punch the clock. He was then asked: "In your opinion, all during the time that you have known Hicks Hunt, the defendant in this case, did you ever observe anything abnormal, irrational or out of the ordinary about him"? He answered, "I did not." No objection was made.

On cross-examination he was closely questioned as to all such matters by defendant's counsel. On re-direct, he was asked by the State's counsel, "State whether or not on the morning of December 18, 1944, when you rode to Prattville with defendant Hicks Hunt, he appeared to be, or seemed to be all right." Objection was made, overruled, and defendant excepted.

The witness answered: "He seemed to be all right." Another question: "State whether or not at that time, he talked intelligently"? Objection was made and overruled, and exception reserved.

■ A non-expert witness may deny generally the existence of any fact showing an abnormal or unnatural state of mind, without specifying any of such facts. Ford v. State, 71 Ala. 385 (8); Parrish v. State, 139 Ala. 16, 43, 36 So. 1012; George v. State, 240 Ala. 632, 636 (6), 200 So. 602, and cases there cited. In those cases the witness was then asked to express his opinion whether the party was sane. But such opinion is not necessary to the legality of his testimony that he saw no fact or circumstance showing an abnormal or unnatural state of mind.

■ We do not think the record here shows meritorious ground for reversal on account of the matters to which we have referred. We do not consider any technical matter in that connection, but only the legality of the evidence.

In rebuttal of evidence of the insanity of appellant, the State introduced as an expert Dr. E. M. Thomas, who with two other doctors had made an examination of appellant as to his sanity on the preceding Sunday. After asking him questions concerning his qualifications as an expert, the State's counsel asked him whether he was appointed by the judge of that court, since the indictment, along with two other doctors to make an examination of appellant (presumably under section 425, Title 15, Code). He answered "yes, sir." Objection was made to this question. Whereupon the State's counsel withdrew the question. Defendant's counsel insisted that the court instruct the jury: whereupon the court stated, "That is not before you, gentlemen, as a part of the evidence in this case," and at the suggestion of the State's solicitor also stated, "and the answer to it is excluded."

■ Appellant insists that it was improper for the State's counsel in this manner to attempt to support the testimony of his witness not under attack; and that its damaging effect was not and could not

have been eradicated. Reliance is had on the principle stated in the case of O'Rear v. Manchester Lumber Co., 6 Ala.App. 461, 60 So. 462, and Parker v. State, 10 Ala. App. 53, 65 So. 90. They hold that it is not error to refuse to permit a party to show lack of interest or bias of his witness until the opposite party had made an attack on him. But in the case of Jones v. State, 31 Ala.App. 504, 19 So.2d 81, the Court of Appeals noted that the trial court would not be ordinarily reversed for permitting such testimony. In so holding we think that court was correct.

■ In the O'Rear case, supra, the trial court had refused to permit plaintiff to ask his witness if he did not work for defendant. The Court of Appeals held that such refusal was without error. Whereas in Empire Coal Co. v. Goodhue, 200 Ala. 265, 76 So. 31, this Court held that it was not error to permit such a question to be asked and answered. This was said to be an introductory or preliminary matter, proof of which is usually permissible if advisable in the sound discretion of the trial court. 70 Corpus Juris 554 to 556, Note 1. And in Parker v. State, supra, the Court of Appeals held that it was not error to refuse to allow a party to prove that his witness was not related to any of the parties. But it was held by this Court not to be error to allow proof by a party that his witness was a widow. Cooper v. State, 63 Ala. 80. There are many illustrations of the principle digested in 19 Alabama Digest, Witnesses, ☞236(2), p. 700.

We do not think it would have been reversible error to have overruled the objection to the question, and have permitted it to be answered. But since it was withdrawn and expressly excluded, there is nothing in the situation which was prejudicial and should have required the court to grant the motion for a new trial.

The foregoing are the matters discussed in brief for appellant, and we find no reversible error in them. We have also considered the entire record, and find it free from error to reverse.

The judgment is affirmed.

Affirmed.

All the Justices concur.

## On Rehearing.

FOSTER, Justice.

The offense is alleged to have occurred on December 18, 1944. The indictment for murder was returned on January 17, 1945. The defendant was arraigned on January 22, 1945, and he plead not guilty and not guilty by reason of insanity, and his trial was set for February 13, 1945. On February 2, 1945, the solicitor filed a motion in writing, and in it referred to the fact that defendant is in jail under said indictment and had pleaded not guilty by reason of insanity, and that his trial was set for February 13, 1945, and moved the court to appoint three reputable specialist practitioners in mental and nervous diseases to examine defendant and make written report of their finding "[as to whether] there is reasonable ground to believe that such defendant was insane either, at the time of the commission of such offense, or presently." (This is the language used in section 425, Title 15, Code.) On the same day the presiding judge made an order, reciting the facts set forth in the motion, and appointing Dr. Sewell, Wetumpka, Dr. Moore of Clanton, and Dr. Thomas of Prattville, "to observe and examine such defendant and to make and file in this cause, as provided by law, a written report as to whether there is reasonable ground to believe that such defendant was insane either at the time of the commission of such offense or presently." On February 11, 1945, those doctors made and had filed their report in writing expressing the opinion that after a thorough physical and mental examination made on that date defendant "exhibits a psychopathic personality, however, not to the extent that he is insane. On examination, he is cooperative, and manifests business ability as well as personality and behavior to associate with people, and further, to conduct himself as a normal individual," and therefore concluded that he "was sane on December 18, 1944, and is sane on this February 11, 1945. We believe that he knows right from wrong and can distinguish between the two." No reference was made to this report on the trial.

There is no evidence that defendant's counsel had notice of the motion or order or was present during the examination or had notice that it was to be made.

The trial was had on February 13, 1945, as previously fixed. The chief defense was as to the insanity of the defendant. The burden being on him, he introduced much evidence to that effect. In rebuttal the State introduced lay witnesses relating to his mental status on December 18th, and then offered Dr. Thomas as an expert. He testified that he had been engaged in the practice of medicine since 1907, graduated at the University of Maryland, and had studied mental and nervous diseases. He read texts and pamphlets and modern textbooks and reports on the subject, and had occasion to examine people who are afflicted with such disorders. He was then asked if he was appointed by the judge of the court since the indictment in this case along with two other doctors to make an examination of defendant, and answered "yes, sir." Defendant's counsel immediately objected and insisted that he tried to do so before the witness answered. We will treat the objection as made in due time. The State's counsel then withdrew the question. Defendant's counsel excepted, and asked that the jury be instructed to disregard it. The court then observed to the jury, "that is not before you, gentlemen, as a part of the evidence in this case." The State's counsel then suggested that the answer be excluded. The court then stated, "and the answer to it is excluded." Dr. Thomas then testified about the examination and when it was made, and who were present: that it took about two hours, and the manner in which the examination was conducted, and concluded that defendant was then of sound mind. On cross-examination by defendant's counsel, he testified that defendant said very little; that he sat about like he is sitting now, and would answer "yes" or "no," and say nothing at all. But that he did mention his troubles, and said this woman had broken up his home, and that he loved this woman "better than anything else in the world," and outside of that he wouldn't say much to most of the things we asked him, but did say she was running around with other men. He testi-

222

fied as to the details of their physical examination.

The State then introduced Dr. Sewell who took part in the examination with Dr. Thomas. He testified to his qualifications and experience, which showed his expert knowledge and experience in mental disorders. He was then asked about the examination, with no reference to any appointment, and reached the conclusion that defendant was sane. He related how the examination was made; that defendant was most of the time cooperative; sometimes he did not make any reply; that they found nothing in his physical examination that had any bearing on his mental condition. The substance of the interview with him is thus stated in the record on cross examination. "We asked him did he ever whip her. He said 'no.' We asked him did she ever whip him. He said he didn't remember her ever whipping him. Then we asked him the question why did he commit this crime. He said it was because of this woman that came between he and his wife. We asked him what did she do, and he stated she was a very immoral woman,—would go out with men, have dates, and go away from him, leave him. We asked him did he ever go seek her out and beg her to come back to him. He said, no, he didn't, but at times she would beg him to come after her and get her, and he would go get her and bring her back. On one occasion we asked him this, and he said he found her in bed with another man. We asked him at the time did he do anything about that. He made no answer. Then we asked him the question how he spent his money,—did he spend any money on her. He said, yes, he spent more money on her than any other one person. Then we asked him the question did she work. He said 'yes.' We asked him then did she spend any money on him, and he said 'very little.' Those are not direct questions and answers but as near as I can state it to you."

There was a verdict and judgment of conviction, and sentence to death. Defendant made a motion for a new trial, including in it the objection made to that feature of the testimony of Dr. Thomas as to his appointment by the court to make the examination of defendant. The motion was overruled.

Counsel insist that the order of the court and the examination of defendant for sanity under it made the expert opinion thus acquired per se self incriminatory as evidence and violated his constitutional right in that respect. Article 1, section 6, Constitution of 1901. Also that it violated the Fifth and Fourteenth Amendments of the Federal Constitution to the same effect.

■ Article 1, section 6, Constitution of 1901 of Alabama prohibits any person from being compelled to give evidence against himself. Amendment No. 5 of the Federal Constitution prohibits any person from being compelled in any criminal case to be a witness against himself, and Amendment No. 14 prohibits a state from depriving any person of life, liberty or property without due process. The Fifth Amendment applies only in federal procedure, and it was held in Twining v. New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97 (16 C.J.S., Constitutional Law, § 589, p. 1182, Note 45) that self incrimination is not protected as violative of due process under the Fourteenth Amendment. But, see, Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527; Grosjean v. American Press Co., 297 U.S. 233, 56 S.Ct. 444(5), 446, 80 L.Ed. 660—whether it is a federal question or not, our problem in this case is the same.

That, we repeat, is whether such an examination of defendant by a commission of doctors was an illegal violation of defendant's rights, and rendered an opinion thus formed illegal as evidence. We will first determine whether the order for the examination was legal. For if it was legal an expert opinion thus obtained was not per se illegal evidence. The question has two aspects; (1) When examination is ordered for the purpose of determining whether defendant has at the time of the trial sufficient mentality to justify the court in putting him on trial at that time; and (2) when the examination is to furnish disinterested evidence by expert witnesses pertinent to his mental condition at the time of the commission of the act charged, solely as evidence on the issue of not guilty by reason of insanity.

Our inquiry at this point is to determine whether the order for the examination of defendant made in this case was justified by law on a consideration of either or both of the two preceding theories.

(1) We will assume for the moment that the order was made and executed to determine whether defendant had sufficient mentality to justify his immediate trial.

The rule at common law (and by statute in capital cases in Alabama) is that if at any time while criminal proceedings are pending against a person accused of a crime, the trial court either from observation or upon suggestion of counsel has facts brought to his attention which raise a doubt of the sanity of defendant, the question should be settled before further steps are taken. 14 Amer.Jur. 801, section 44; section 425, Title 15, Code of 1940. The method to be employed is generally in the discretion of the court. The court may appoint a commission of experts (section 425, supra), or have an inquisition by a jury (section 426, Title 15, Code). The broad question to be determined then is whether the defendant is capable of understanding the proceedings and of making his defense, 3 A.L.R. 97, and whether he may have a full, fair and impartial trial. 14 Amer.Jur. 802, section 45, note 9. We can find no authority which holds that the statutes providing for the examination of accused who is pleading insanity so as to determine whether the present status of defendant's mentality justifies his immediate trial, violates the constitutional immunity of the accused against self incrimination. People of State of New York v. Esposito, 287 N.Y. 389, 39 N.E.2d 925, 142 A.L.R. 956, Note p. 961; 14 Amer.Jur. 804, section 47, note 2.

It is not doubted by any authority that we have seen that the doctors may testify to the present state of his sanity in their opinion as affecting the question of his condition in that respect at the time of the alleged crime, although their knowledge as to his present mental status was acquired by examination had on the appointment of them as a commission to do so to determine whether he should be put upon trial.

(2) The second theory above mentioned presents more difficulty. There is involved in it, not only the self incrimination theory, but also the due process theory.

The contention is that such an examination of accused constitutes an invasion of his right of privacy by an unreasonable search and his exemption from being a witness against himself, and that the matter of selecting witnesses for the State is in no sense a judicial act, and its exercise by the court would endanger the safeguard which the due process clause protects; that the experts so selected have the weight of the court's sanction as to candor, ability and truthfulness, while the other testimony must be judged by ordinary standards. A case holding that such procedure violates the self incrimination and due process clauses, is People v. Dickerson, 164 Mich. 148, 129 N.W. 199, 33 L.R.A.,N.S., 917, Ann.Cas.1912B, 688, decided in 1910. We find no later decision which supports that theory.

But it is sharply criticized by later cases. In People v. Strong, 114 Cal.App. 522, 300 P. 84, 85, in denying that such procedure violates constitutional rights and referring to the Dickerson case, supra, the opinion quotes Wigmore as saying of that case, "As the history and authorities of the present subject are ignored in the opinion and as its fantastic logic would hardly be followed elsewhere, no further notice of its contents is needed," citing Wigmore on Evidence, 2d Ed., Vol. 5, section 2484. The court stated that an "appointment of that character is in aid of truth, which the court is seeking in order to determine the controversy with justice to all; and while it may be admitted that the act of appointment is not a judicial act in and of itself, in the constitutional sense, no more is it an executive act in that sense, aiding as it does the exercise of the judicial power of the state in its search for truth."

The case opposing the Dickerson case, supra, which is cited perhaps more than the others, is Jessner v. State of Wisconsin, 1930, 202 Wis. 184, 231 N.W. 634, 638, 71 A.L.R. 1005. That case wholly repudiates the principle. It takes up carefully every argument against such practice. It points out the desirability of having some evidence

in the case not bought and paid for coming from impartial witnesses who owe no duty or allegiance to either side of the controversy, which should be made known to the jury. There is no constitutional provision which it contravenes. It is there further said: "The function of these experts is to aid in the administration of justice by furnishing reliable and unprejudiced opinions upon a technical subject. The whole purpose of their creation and appointment is to promote the accomplishment of the very purposes for which courts are established. This is accomplished not independently of, but within and under the direction of, the court, and in conformity to the practices of the court. For the purpose of that trial they are a part of the machinery of the court. They render assistance to the court. These considerations lead to the conclusion that their appointment is a most appropriate judicial function. The statute cannot be condemned on this ground," that is, that it is a non-judicial function. The court arrived "without hesitation, at the conclusion that this statute offends against no constitutional provision."

The case of Noelke v. State, 1938, 214 Ind. 427, 15 N.E.2d 950, also discusses the question at some length. It was contended that it violated the self incrimination feature of the Constitution. The court cited the Jessner case, supra, and cited and quoted from Commonwealth v. Millen, 289 Mass. 441, 194 N.E. 463, to the effect that the contention was without merit. To the same effect sec, State v. Nelson, 162 Or. 430, 92 P.2d 182, 183; Ingles v. People, 92 Colo. 518, 22 P.2d 1109.

■ It is recognized by good authority that the court in its sound discretion may introduce witnesses in a criminal case, though they are not offered by either the state or defendant, especially so as to expert witnesses, originally regarded as "amici curiae," from the earliest period. 3 Chamberlayne on Evidence, section 2376, 2552-2570; State v. Horne, 171 N.C. 787, 88 S.E. 433; Morris v. State, 100 Fla. 850, 130 So. 582(9); Buchanan v. State, 95 Fla. 301, 116 So. 275; Hull v. State, 136 Fla. 644, 187 So. 392, 407 (44, 45); 16 Corpus Juris 846, Note 69; 23 C.J.S., Criminal Law, § 1017; 70 Corpus Juris 566, §

723, Note 61 et seq.; Gomila v. United States, 5 Cir., 146 F.2d 372; United States v. Guertler, 2 Cir., 147 F.2d 796. An expert witness may be compelled to testify to his opinion as such. Section 366, Title 7, Code. And the power of the court in capital cases to appoint experts in mental diseases to examine the defendant as a basis for their opinion is distinctly authorized by section 425, Title 15, Code. Their appointment and examination constitute a judicial function in our opinion.

■ Upon a consideration of the foregoing principles, we conclude that the trial court had the power to appoint disinterested experts to examine into the present state of defendant's mentality to determine what further procedure should be had and whether he should be put upon trial, and if the experts were of the opinion that he was not then insane their testimony would be legal if given upon his trial as to his mental condition when the alleged crime was committed, which was here less than two months before their examination. We also find that the court followed the language of section 425, supra, in appointing the doctors, which was we think for the additional purpose of having disinterested experts to give testimony as to his sanity at the time of the commission of the offense to rebut the evidence of defendant on his plea of not guilty by reason of insanity, and we think that this was not improper or unlawful; so that we do not find there was any illegality in their appointment or that their opinion formed by an examination thus made was per se illegal as evidence.

But we will inquire whether the method of defendant's examination by the doctors was so conducted as to force him against his will to do or say something which was self incriminatory. We find the following principles applicable to that inquiry.

■ In this State a person cannot be required against his will to do any positive act tending to operate as evidence against himself in a criminal case. Cooper v. State, 86 Ala. 610, 6 So. 110, 4 L.R.A. 766, 11 Am.St.Rep. 84; Potter v. State, 92 Ala. 37, 9 So. 402; Davis v. State, 131 Ala. 10, 31 So. 569; Burks v. State, 240 Ala. 587,

200 So. 418; Smith v. State, 247 Ala. 354, 24 So.2d 546.

But it does not violate this rule for another person to do an act against the will of the defendant which relates to his person, and thereby cause to be revealed matter material as evidence against him, as by an illegal search where he was "required to produce nothing, to testify to nothing, and no presumption was indulged against him as a penalty for his failure to comply with any order of court," Chastang v. State, 83 Ala. 29, 3 So. 304; Banks v. State, 207 Ala. 179, 93 So. 293, 24 A.L.R. 1359; 6 Alabama Digest, Criminal Law, ☞ 394, p. 282 as by the officers putting on him a cap for the purpose of indentification. Crenshaw v. State, 225 Ala. 346, 142 So. 669; Orr v. State, 236 Ala. 462, 183 So. 445. In Canty v. State, 238 Ala. 384, 191 So. 260, it was held competent to prove that the defendant ran at the instance of officers for identification, but made no objection to doing so. And in Spicer v. State, 69 Ala. 159, a defendant submitted to a physical examination on the assurance that "it would be the best thing for her that she could do," it was held to be competent to give evidence of the facts developed, although the consent may have been obtained illegally. And it has been held that if the testimony of one before the grand jury was voluntary, it may be used against him without violating the Constitution (section 6, supra). Ex parte Montgomery, 244 Ala. 91, 12 So.2d 314(14); Wilson v. State, 110 Ala. 1, 20 So. 415, 55 Am.St.Rep. 17; 22 C.J.S., Criminal Law, § 655, p. 1002.

The United States Supreme Court has held that if a witness testifies voluntarily before a grand jury without a subpoena, and without claiming the benefit of immunity, he will not be considered to have been "compelled" to be a witness. But under an act of Congress "if he is subpoenaed and sworn, and testifies, he is to have immunity." United States v. Monia, 317 U.S. 424, 63 S.Ct. 409, 412, 87 L.Ed. 376. We are not here interested in an act of Congress which does not control the situation.

In Waters v. State, 22 Ala.App. 644, 119 So. 248, our Court of Appeals held that an examination of defendant, while in jail, by doctors, in the absence of defendant's counsel, where no force was used to induce the interview, did not violate this right of defendant. It does not appear that the court ordered the examination. This is sometimes stated to be a generally accepted view. 16 Corpus Juris 568, Note 11; 22 C.J.S., Criminal Law, § 651, p. 998, Notes 26, 27 and 28; Touchton v. State, 154 Fla. 547, 18 So.2d 752. The question is discussed in Blocker v. State, 92 Fla. 878, 110 So. 547, where the same result was reached, but apparently there was no order of court requiring such examination.

From the foregoing authorities it is apparent that an affirmative act or declaration made by a person not acting voluntarily is not admissible against him. But that facts ascertained and opinions formed by an examination without his consent or when his consent to the examination was improperly obtained are not inadmissible on that account. Spicer v. State, supra; Banks v. State, supra.

But we do not interpret the order of the court to direct the examination of defendant against his will or over his protest. It does not order him to submit to an examination. It does not appear that defendant even knew of the order appointing the doctors, or that he made any objection to the examination, or that any force or inducement was used. Therefore the examination was not compulsory theoretically or actually, and, moreover, there was no affirmative act or declaration of defendant offered against him, but only the expert opinion reached by the doctors as the result of their examination.

There is nothing disclosed in this record which shows that the rights of defendant were infringed by the method of his examination, or that he was required to do or say anything against his will.

We do not think it was illegal to ask the doctor, when and where he made the examination of defendant, and whether he was appointed by the court to do so. This was merely a preliminary and introductory statement, so as to show the occasion of his doing it.

We do not think the record shows that any constitutional right, state or federal, was violated so far as we have discovered.

The application for rehearing is overruled.

All the Justices concur, except BROWN, J., who dissents.

BROWN, Justice (dissenting).

The order of the court appointing practicing physicians of medicine to examine the defendant was made on motion of the state's solicitor without the presence of the defendant and his attorneys in court and without notice to them after defendant's arraignment and pleas of "not guilty" and "not guilty by reason of insanity" had been interposed. And defendant's attorneys were not present or given the opportunity to be present during the examination by said physicians.

Due process of law requires that the defendant be present in court by himself and his counsel during every step of the proceedings, with the right to be heard in respect thereto. Hence the order of the court and the appointment of said physicians was improvident, irregular and erroneous, and its use should not be permitted as a vehicle for furnishing evidence against the defendant on trial for his life. People v. Dickerson, 164 Mich. 148, 129 N.W. 199, 33 L.R.A.,N.S., 917, Ann.Cas.1912B, 688; 71 A.L.R. 1017. In cases where the death penalty is inflicted the law imposes the duty on the court to examine with great particularity the proceedings, and to see that the defendant is not denied any constitutional right. The automatic appeal statute imposes the duty on the court to examine the record and the evidence offered against him, though there is no motion for a new trial made by him. Easley v. State, 246 Ala. 359, 20 So.2d 519; Fisher v. United States of America, 66 S.Ct. 1318; Patterson v. State, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527.

In my opinion the judgment of the circuit court in this case should be reversed and the cause remanded for a new trial. The faith of the people in the judgments and proceedings of courts of justice must be preserved and this cannot be done unless due process of law is strenuously maintained and observed. I, therefore, respectfully dissent from the opinion and conclusion of the majority.