:88 So.2d 700

## W. E. HOLLOWAY

### v.

### STATE.

2 Div. 898.

Court of Appeals of Alabama.

May 8, 1956.

Rehearing Denied June 19, 1956.

Archie I. Grubb, Eufaula, and J. Massey Edgar and Zack Rogers, Jr., Butler, for appellant.

John Patterson, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

PRICE, Judge.

This prosecution was begun on March 5, 1951, by an affidavit made before the Judge of the Inferior Court of Choctaw County, Alabama, charging defendant with a violation of Tit. 14, § 232, Code 1940, the "bad check" law. This section has since been repealed by act approved June 20, 1951.

On the trial in the Inferior Court defendant was convicted, and he appealed to the circuit court where he was tried and convicted upon an information filed by the Solicitor on February 22, 1955.

In the circuit court appellant's counsel filed "plea to the jurisdiction," asserting that appellant, a legal resident of Barbour County, was arrested at his residence in Barbour County on February 26, 1951, by the Sheriff of Choctaw County, but without the endorsement on the warrant by a Magistrate of Barbour County required by Sec. 163, Tit. 15, Code 1940, and that his arrest was unlawful and the warrant of arrest was void.

In the hearing on the plea the proof showed that defendant filed plea to the jurisdiction in the Inferior Court and when the case was called for trial it was dismissed. The defendant was again arrested, in open court, under a second warrant issued on a complaint charging the same offense. Defendant was tried and convicted under the second complaint.

■ The court ruled against appellant's said "plea to jurisdiction." In this there was no error. The recitals of the appeal bond from the Inferior Court to the Circuit Court, showing trial and conviction of defendant in the Inferior Court and appeal from that judgment, were sufficient to give the circuit court jurisdiction to try and determine the case. Boykin v. State, 23 Ala.App. 598, 129 So. 491; Ford v. City of Birmingham, 35 Ala.App. 371, 47 So.2d 287, certiorari denied 254 Ala. 514, 47 So.2d 290.

■ However, admitting that the officers executing the warrant had no authority to arrest defendant outside the county without endorsement on the warrant as required by statute, the Inferior Court nevertheless acquired jurisdiction of appellant, and the fact that he may have been brought within the jurisdiction of the court after an unlawful arrest made in another jurisdiction, did not render the proceedings void in the Inferior Court. Wilson v. State, 25 Ala.App. 298, 145 So. 591; 6 C.J.S., Arrest, § 3, p. 574.

At the bottom of the docket sheet of the "Criminal Division, Inferior Court" introduced in evidence as defendant's Exhibit 5, there appears the notation: "Defendant gives notice of appeal. Bond fixed at $2,000.00, jury trial."

Before any testimony was taken on the main trial the defendant was examined relative to a demand for a jury. He testified that the lawyers representing him in the circuit court were also present and represented him on the trial in the Inferior Court. He said he did not recall whether the lawyers made demand in open court for a jury trial, but he did not request his attorneys to make any such demand. On cross examination defendant said he left the matter of whether a jury trial should be had to the discretion of his attorneys, but did not discuss it with his attorneys. Mr. Archie Grubbs, of Eufaula, was the leading counsel and he associated Mr. Rogers and Mr. Edgar with him in the case.

Mr. Bruister, the Circuit Clerk of Choctaw County, testified that he was such Circuit Clerk on March 5, 1951, and was also the Clerk of the Inferior Court, and was present in court at the time this case was concluded; he did not recall that either the defendant or any of his attorneys requested or made demand for a jury trial; that he did not think he wrote on the docket a request for a jury trial and he is positive it is not his handwriting; that he does not know who made the notation "jury trial" on the docket; that he is familiar with the handwriting of the Judge of the Inferior Court and the notation was not written by Judge Phillips. When the case was appealed to the circuit court it

was placed on the non-jury docket; that he has notified defendant and his attorneys several times that the case was set for trial on the non-jury docket and neither defendant nor his said attorneys made any objection to the case being on the non-jury docket and, so far as he knows, nothing has ever been said by any of said parties about placing the case on the jury docket.

Mr. Christopher, County Solicitor, testified that he participated in the trial of defendant in the Inferior Court and was present when notice of appeal was given; that none of the parties made demand for jury in his presence; that he is familiar with the handwriting of Judge Phillips and in his opinion the words "jury trial" are not in his handwriting. Since its appeal the case has appeared on the non-jury docket and no mention has been made to him as Solicitor that a jury trial was desired.

We are of the opinion there was no error in the court's finding that no demand was made for a jury trial as provided by Sec. 321, of Tit. 15, and that the court properly proceeded to try the defendant without a jury.

The evidence is without dispute that the accused bought a car load of lumber from the prosecuting witness, Frank Gibson. In payment the appellant gave a check in the amount of $1,625.34, dated October 21, 1950. The bank refused to honor the check because of "insufficient funds."

The prime conflict in the evidence relates to the circumstances incident to the purchase and delivery of the lumber and the payment therefor.

Mr. Gibson testified that prior to the transaction of instant concern he had sold Mr. Holloway, the appellant, a considerable amount of lumber; that this business relationship was in every way satisfactory up to several weeks preceding the sale in question.

According to the testimony of the witness, during the period of time just indicated, the checks given him by Mr. Holloway were not paid at the bank. On account of this situation he refused to extend further credit to the appellant and informed the latter that all future purchases of lumber must be on a cash basis.

These facts substantially follow the statement of fact set out in the case of Holloway v. State, 37 Ala.App. 96, 64 So.2d 115, a case involving this defendant.

In the instant case Mr. Gibson testified with reference to the purchase of this car of lumber, that it was only after defendant told him he had everything fixed so that he could pay cash on the barrel head for it that he proceeded to load the lumber on the car, located on his private railroad switch. The loading was completed on October 18, 1950, and an invoice of that date was made up for the lumber, but neither the invoice nor the car of lumber was delivered to defendant until defendant gave witness his check for $1,625.34 in payment for the lumber on October 21, 1950. At the time he gave the check defendant stated he had the money to cover the check in the First State Bank of Waynesboro, Mississippi.

On cross examination witness stated that sometimes in former dealings defendant had been given the invoice before his check was issued, but the date of the invoice did not necessarily control the time when title to the lumber passed to defendant.

Mr. V. B. McWhorter, President of the First State Bank of Waynesboro, Mississippi, testified that defendant's account was overdrawn in the amount of $1,386.54 on October 20, 1950. On October 21 his account was overdrawn $1,420.30. Defendant's office was across the street from the bank and he was in the bank practically every day and sometimes several times during the day, and it is the policy of the bank to notify its customers every day as to their overdrafts. Defendant was notified on October 20 that his account was overdrawn, and about the same time Mr. Gibson had had other checks written by appellant which had been returned because of insufficient funds.

Mrs. Gladys Lane, Agent of the A. T. & N. Railroad Company, testified defendant

came to her office at Gilbertown on the afternoon of October 18, 1950, and she prepared at his direction a bill of lading for the car of lumber. He had the car number but did not show her an invoice or any authorization from Mr. Gibson. On the 19th witness asked Mr. Gibson if the car was ready to be moved and he said it was not, but did not tell her why. The car was moved around noon on October 21st.

The car was in Mr. Gibson's possession and if on the 21st he had told the train crew to leave it there they would have left it.

Appellant testified he bought between one hundred and one hundred twenty cars of lumber from Gibson lumber company during the course of his business dealings with them. Business was done on a wholesale, open account basis, and defendant was entitled to a discount of 2% ten days, thirty days net. Just prior to October 18 he gave Mr. Gibson a verbal order for two car loads of a certain kind of lumber. He picked up copies of the invoices made out to him at Mr. Gibson's place of business on the afternoon of October 18. After he received the invoices he went to the railroad station and Mrs. Lane issued the bill of lading. It was not the policy to present to the agent a copy of the invoice. At the time Mr. Gibson handed him copies of the invoices no question was raised as to when payment would be made for the lumber. On the 21st of October he went back to Gibson Lumber Company and gave a check in the amount of $1,625.34, covering the car in question, and a check for $1,423.50 covering the other car. Mr. Gibson did not contact him by telephone or in person between the 18th and the 21st. Witness said he began doing business with the Bank of Waynesboro in 1946. He had had overdrafts several times but his account had never been questioned, and Mr. McWhorter had not mentioned that he would not honor any further checks until after these two checks were issued. He further testified the bank was financing a part of his lumber purchases and that witness advanced money to Gibson; that his financial difficulties were partly occasioned by the consignee's rejection of lumber because it failed to meet specifications.

Defendant insisted that because of the way his bank account was handled he did not issue either of the checks to Mr. Gibson knowing at the time that he did not have sufficient funds in the bank with which to pay them and did not misrepresent his status at the bank to Mr. Gibson for the purpose of getting him to sell him the lumber, and that Mr. Gibson never told him at any time prior to October 18 or October 21 that he would have to have cash before he billed the lumber out. His understanding with Gibson Lumber Company was that title to the lumber passed to him when he billed the cars out.

Section 234 of Title 14, Code 1940, provides a rule of evidence to the effect that in prosecutions for a violation of sections 232 and 233 of said title, the refusal of the drawee bank to pay such check because of insufficient funds shall be prima facie evidence of intent to defraud and of a knowledge of insufficient funds.

The undisputed evidence here made out a prima facie case against the defendant under this rule of evidence.

This statute also permits the person charged with the offense to testify as to his intent when he drew the check, as was done by this defendant. However, such testimony is not conclusive, and the court had the right to give such testimony the weight to which in his judgment it was entitled. Nix v. State, 27 Ala.App. 94, 166 So. 716, certiorari denied 232 Ala. 53, 166 So. 719.

The evidence presented a question for the court to determine and was ample to support the judgment.

Affirmed.