**338**

164 So.2d 505

Jonathan Earl MEAD

v.

STATE.

I Div. 906.

Court of Appeals of Alabama.

Jan. 8, 1963.

Rehearing Denied March 12, 1963.

Thos. M. Haas and Douglas Stanard, Mobile, for appellant.

MacDonald Gallion, Atty. Gen., and Winston Huddleston, Sp. Asst. Atty. Gen., for the State.

JOHNSON, Judge.

The appellant makes application for rehearing from a decision of this court affirming a judgment of his conviction by a jury in the Circuit Court of Mobile County for a misdemeanor which was charged by Complaint in the following language:

"1. The State of Alabama by its Solicitor, CARL M. BOOTH, complains of JONATHAN EARL MEAD, that within twelve months before the commencement of the prosecution he did unlawfully possess a barbiturate, to-wit; nembutal sodium which was not obtained on the prescription of a practitioner, against the peace and dignity of the State of Alabama.

"2. The State of Alabama by its said Solicitor further complains of JONATHAN EARL MEAD, that within twelve months before the commencement of the prosecution, he did unlawfully possess a barbiturate, to-wit; nembutal sodium, which was not delivered by a practitioner in the course of his practice; which was not in a container bearing the directions for the use of such drug, or the name and address of the practitioner prescribing the same nor the name and address of the patient for whom prescribed, against the peace and dignity of the State of Alabama."

There had been an earlier trial on August 2, 1961, for the same offense in the Court of General Sessions of Mobile County which resulted in a conviction and sentencing. That conviction was appealed to the Circuit Court where there was a trial de novo from which appeal for review was made to us.

The facts are summarized as follows:

James E. Brister, owner and operator of Buck's Truck Stop on the Bay Bridge Causeway on Highway 90, 98 and 31, in Mobile County, testified that appellant, Jonathan Earl Mead, came to his place of business on June 12, 1961, and asked him if he would be interested in selling some "bennie pills". Mr. Brister said that Mead showed him a couple of the pills which he said were bennie pills. He told Mead that he wasn't interested and Mead left. Mr. Brister then got Mead's license number and called the sheriff's office and reported the incident to a Mr. Blake. Immediately Mobile County Deputies Huckabee and Thompson came to Brister's place of business and he there related to them what had just occurred and gave them the description of Mead's car and its tag number.

The two deputies left Buck's Truck Stop and drove over the causeway into Baldwin County looking for Mead. They spotted Mead's car parked at Trailway Truck Stop, in Baldwin County. The deputies then returned to Mobile County, parked by the highway in front of Ray's Fishing Camp on the Mobile side of the Tensas Bridge and waited for Mead to return to Mobile. A few minutes later, Mead drove back into Mobile County and the deputies followed him through the Bankhead Tunnel and arrested him in Mobile County at the corner of Government and Conception Streets. Mead was then taken to the Sheriff's office. First, Mead's person and then his black leather bag were searched and pills were found which, after the toxicological examination, were identified by Dr. Nelson Grubbs, State Toxicologist, as being barbiturates known as nembutal sodium and phenobarbital.

According to the testimony of Deputy Huckabee, no warrant of arrest or search warrant was in their possession at the time of the arrest. Huckabee testified that he received permission from Dr. Mead before looking into the bag which was found on the front seat of the automobile. He discovered "several bottles of pills, capsules and liquid" in the bag, and he signed a complaint against the appellant on June 16, 1961, four days after the arrest. Deputy Thompson confirmed this testimony.

Mrs. Alta Mead testified that her husband was a chiropractor, and had received a diploma from the Palmer School of Chiropractic and she also introduced into evidence a receipt for a license to practice in Moss Point, Mississippi. She also testified that on June 12, 1961, her husband had an office in Moss Point, Mississippi, and was practicing there even though he was living in Mobile. She testified that he had practiced in Alabama for several years prior to this time.

On January 18, 1962, there was a hearing on four motions made by the defendant:

1. Motion for discovery

2. Motion to suppress the State's evidence

3. Motion to dismiss the charge because the defendant was illegally arrested

4. Motion to dismiss the charge because the defendant was denied the right to a speedy trial.

Evidence was taken and arguments were heard upon the four motions and they were each denied by the court. The motions were refiled and again denied at the beginning of the trial on the merits on April 9, 1962. The appellant urges that the denial of each motion is a sufficient ground for reversing this conviction.

Even while contending that the trial court committed error in denying defendant's motion for pre-trial discovery of certain evidence held by the State, the defendant admits in his brief that the trial judge acted according to the established law of this State.

■ The defendant contends that he was illegally arrested and that he was denied a speedy trial. Even though he were to convince the court of the correctness of his

**340**

contentions, he would not have established grounds for reversal of his conviction. Holloway v. State, 38 Ala.App. 501, 88 So. 2d 700; Behel v. State, 40 Ala.App. 689, 122 So.2d 537; Wilson v. State, 25 Ala.App. 298, 145 So. 591.

The evidence which the defendant moved to suppress was barbiturate pills. Some of the pills were taken from the defendant's lefthand coat pocket. According to Officer Huckabee's testimony during the hearing on the four motions, he took them from the defendant's lefthand coat pocket in the basement of the County Court House. According to Officer Thompson's testimony on the trial of the merits, Huckabee took the pills from Mead's coat pocket at Government and Conception Streets. Under either version, the pills taken from defendant's coat pocket were seized before the other pills that were in evidence.

The other pills were taken from defendant's black bag which was on the seat of his automobile at the time it was stopped at Government and Conception Streets. Officer Huckabee testified at the trial as follows:

"Q. Where did you stop him?

"A. At Government and Conception.

"Q. What did you do after you stopped him?

"A. Asked him for his driver's license.

"Q. What did you see in his car, if anything?

\* \* \* \* \* \*

"A. A black leather bag..

"Q. Did you ever look inside that bag?

\* \* \* \* \* \*

"A. Yes, sir.

"Q. When did you look inside that bag?

"A. After we had brought Mr. Mead to the Sheriff's office over here in Mr. Blake's office.

"Q. All right. Was there any conversation between you and Mr. Mead before you opened the bag?

"A. Yes, sir.

"Q. What was that conversation?

\* \* \* \* \* \*

"A. I asked Mr. Mead if he minded if I looked in the bag.

"Q. What did he say?

"A. He said, no, go ahead.

\* \* \* \* \* \*

"Q. And that was the first occasion in which you looked in it?

"A. Yes, sir.

"Q. What did you see in there?

\* \* \* \* \* \*

"A. There were several bottles of pills, capsules and liquid.

■ Mead gave Huckabee permission to search his black leather bag. Therefore, the search of the bag was legal and the evidence disclosed by the search was admissible. Hunt v. State, 248 Ala. 217, 27 So. 2d 186.

■ We are aware that the testimony at the hearing on the motions did not disclose that Mead gave Huckabee permission to search his black leather bag. It may be that on the hearing of the motion to suppress, the State did not advance enough proof that the search of Mead's bag was lawful. However, such error was cured by the testimony at the trial on the merits that the search was made with Mead's permission.

There were enough pills seized with defendant's permission and introduced into evidence to support the conviction. Exclusion from evidence of the pills taken from the coat pocket would leave sufficient evidence taken from the black bag to uphold the conviction.

Opinion extended.

Application for rehearing overruled.